**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

PROSPECT CAPITAL CORPORATION,

                              Plaintiff,                Case No. 23-cv-3005 (JSR)

      vs.

CREDITO REAL USA FINANCE LLC,

                              Defendant.

---------------------------------------------------------------

**PLAINTIFF PROSPECT CAPITAL CORPORATION'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT CREDITO REAL USA FINANCE LLC'S MOTION TO
<u>DISQUALIFY PROSPECT ADMINISTRATION LLC AND JONATHAN J. LI, ESQ.</u>**

Adam M. Burton, Esq.
Jonathan J. Li, Esq.
10 East 40th Street, 45th Floor
New York, New York 10016
(646) 845-6060

*Counsel for Plaintiff Prospect Capital Corporation*

# **Table of Contents**

PRELIMINARY STATEMENT ...................................................................................................1

LEGAL STANDARD.................................................................................................................4

FACTS .......................................................................................................................................6

   A.  Mr. Li and Mr. Burton are Members of the Bar with Extensive Experience Representing
       PCC ..................................................................................................................................6

   B.  The Prospect Entities and Their Affiliates Share In-House Counsel……………………..8

ARGUMENT…………………………………………………………………………………...9

   A.  Defendant's Motion to Disqualify PA Does Not the Impact Attorneys Appearing in This
       Action……………………………………………………………………………………10

   B.  There is No Basis to Disqualify So-Called "PA Lawyers" Under Rule 495……………….12

       1.  Rule 495 Is Not Dispositive…………………………………………………………12

       2.  Mr. Burton and Mr. Li Have Not Violated Rule 495…………………………….13

       3.  Defendant's "Fee-Splitting" Argument is a Red Herring………………………...14

   C.  Mr. Li is Not a Necessary Fact Witness, Even if This Case Proceeds to Trial…………...16

       1.  Mr. Li's Testimony Is Not Necessary at a Forthcoming Bench Trial Even Assuming
          No Summary Judgment Is First Granted…………………………………………18

       2.  Mr. Li's Testimony Does Not Create Substantial Prejudice at a Forthcoming Bench
          Trial Even Assuming No Summary Judgment Is First Granted…………………20

       3.  Because the Court May Grant Plaintiff's Motion for Summary Judgment,
          Defendant's Motion is Premature…………………………………………………...22

       4.  Mr. Li's Pending Paternity Leave May Moot This Motion as to Mr. Li…………22

CONCLUSION………………………………………………………………………...……...22

# <u>Table of Authorities</u>

**Page(s)**

**Cases**

*Acker v Wilger*,
    12-cv-3620, 2013 WL 1285435 (S.D.N.Y. Mar. 29, 2013) ..................................................... 21

*Akagi v. Turin Hous. Dev. Fund Co.*,
    13-cv-5258, 2017 WL 1076345 (S.D.N.Y. Mar. 22, 2017) ............................................. passim

*Aquino v. Alexander Cap., LP*,
    21-cv-1355, 2021 WL 6427620 (S.D.N.Y. Dec. 21, 2021) ............................................. 17, 21

*Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*,
    376 F. Supp. 2d 426 (S.D.N.Y. 2005) ......................................................................................... 5

*Bd. of Ed. of City of New York v. Nyquist*,
    590 F.2d 1241 (2d Cir. 1979) ................................................................................................. 5, 9

*Broad. Music, Inc. v. R Bar of Manhattan, Inc.*,
    919 F. Supp. 656 (S.D.N.Y. 1996) .......................................................................................... 15

*Browning v. Peyton*,
    123 F.R.D. 75 (S.D.N.Y. 1988) ............................................................................................... 15

*Cartier, a Div. of Richemont N. Am., Inc. v. Bertone Grp., Inc.*,
    404 F. Supp. 2d 573 (S.D.N.Y. 2005) ..................................................................................... 22

*Doe 1 v. JPMorgan Chase Bank, N.A.*, No. 22-cv-10019,
    2023 WL 3383724 (S.D.N.Y. May 11, 2023) ......................................................................... 4, 5

*Finkel v. Frattarelli Bros.*,
    740 F. Supp. 2d 368 (E.D.N.Y. 2010) ..................................................................................... 17

*Fuchs v. Wachovia Mortg. Corp.*,
    41 A.D.3d 424 N.Y.S.2d 148, 149 (2d Dep't 2007) ............................................................... 16

*G.C. Williams & Co. v. Superior Nut Co.*,
    90-cv-7821, 1995 WL 761287 (S.D.N.Y. Dec. 23, 1995) ...................................................... 19

*Gormin v Hubregsen*,
    08-cv-7674, 2009 WL 508269 (S.D.N.Y. Feb. 27, 2009) ....................................................... 22

*Gottlieb v. Simon*,
    No. 97 CIV. 1019 (JSR), 1998 WL 66007 (S.D.N.Y. Feb. 17, 1998) ..................................... 10

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
409 F.3d 127 (2d Cir. 2005)..................................................................... 12

*Hertzog, Calamari & Gleason v. Prudential Ins. Co. of Am.*,
850 F. Supp. 255 (S.D.N.Y. 1994).............................................................. 2

*Hewlett-Packard Fin. Servs. Co. v. New Testament Baptist Church*,
18-cv-10230, 2019 WL 3800234 (D.N.J. Aug. 13, 2019)............................ 18

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*,
889 F.2d 1274 (2d Cir. 1989)................................................................... 20

*In re Bohack Corp.*,
607 F.2d 258 (2d Cir. 1979)....................................................................... 5

*Intelsat, Ltd. v. Int'l Telecommunications Satellite Org.*,
06-cv-10165, 2007 WL 844816 (S.D.N.Y. Mar. 16, 2007)...................... 19

*John Wiley & Sons, Inc. v Book Dog Books, LLC*,
126 F. Supp. 3d 413 (S.D.N.Y. 2015).................................................. 17, 18

*Lamborn v. Dittmer*,
873 F.2d 522 (2d Cir. 1989)................................................................... 20

*M.K.B. v. Eggleston*,
414 F. Supp. 2d 469 (S.D.N.Y. 2006).................................................... 12

*Margulis v Hertz Corp.*,
14-cv-1209, 2017 WL 772336 (D.N.J. Feb. 28, 2017)......................... 3, 13

*Murray v. Metro Life Ins. Co.*,
583 F.3d 173 (2d Cir. 2009)............................................................ 17, 20

*Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*,
07-cv-7983, 2014 WL 1201905 (S.D.N.Y. March 24, 2014).................... 21

*Petrisch v. JP Morgan Chase*,
789 F. Supp. 2d 437 (S.D.N.Y. 2011)................................................ 14, 15

*Prout v. Vladeck*,
316 F. Supp. 3d 784 (S.D.N.Y. 2018)................................................ 12, 22

*Raghavendra v. Trustees of Columbia Univ.*,
06-cv-6841, 2007 WL 9818916 (S.D.N.Y. Sept. 28, 2007) ................. 1, 4, 5

*Renner v. Townsend Financial Services Corp.*,
No. 98-cv-926, 2002 WL 1013234 (S.D.N.Y. May 20, 2002) ................................. 17

*Rosewood Apartments Corp. v. Perpignano*,
99-cv4226, 2000 WL 145982 (S.D.N.Y. Feb. 7, 2000) ........................................... 17

*Shabbir v. Pakistan Int'l Airlines*,
443 F. Supp. 2d 299 (E.D.N.Y. 2005) .................................................................... 10

*Soc'y for Good Will to Retarded Children, Inc. v. Carey*,
466 F. Supp. 722 (E.D.N.Y. 1979) .......................................................................... 5

*Solow v. Conseco, Inc.*,
2007 WL 1599151 (S.D.N.Y. June 4, 2007) ........................................................... 18

*Summit Health, Inc. v. APS Healthcare Bethesda*,
993 F. Supp. 2d 379 (S.D.N.Y. Jan. 24, 2014) ....................................................... 20

*Travelers Ins. Co. v. Commissioners of State Ins. Fund*,
227 A.D.2d 208 (1st Dep't 1996) ............................................................................ 16

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*,
98-cv-7128, 2004 WL 213032 (S.D.N.Y. Feb. 3, 2004) ................................... 13, 14

*Volpe v. Ryder*,
19-cv-2236, 2022 WL 21221 (E.D.N.Y. Jan. 3, 2022) .............................................. 5

**Rules**

N.Y. Comp. Codes R. & Regs. tit. 22, § 522.1 .................................................... passim

N.Y. Judiciary Law 495 ................................................................................. 2, 12, 15

NYC Eth. Op. 1994-6 (May 5, 1994) ........................................................................ 15

NYCLA Eth. Op. 670(89-3) (May 19, 1989) ...................................................... 3, 15

Rule 3.7(a) ...................................................................................................... 16, 17, 20

Rule 3.7(b) ............................................................................................................... 16

Rule 30(b)(b) ........................................................................................................... 21

Rule 495(5) .................................................................................................... 2, 13, 14

**Statutes**

15 U.S.C.A. § 80a-2(a)(3).............................................................................................. 9

Investment Company Act of 1940 ................................................................................ 9

Plaintiff Prospect Capital Corporation ("Plaintiff" or "PCC") respectfully submits this memorandum of law in opposition to Defendant Credito Real USA Finance LLC's ("Defendant" or "CRUSAFin") motion to disqualify Prospect Administration LLC ("PA") and Jonathan J. Li, Esq. from representing Plaintiff in this action.

## PRELIMINARY STATEMENT

What does a defendant do when it has no legitimate defenses to a simple breach of contract action?  In this case, Defendant's hail-mary tactic is to file an absurd motion to disqualify opposing counsel (Plaintiff's in-house counsel) in the hopes of depriving Plaintiff's choice of counsel and driving up Plaintiff's legal costs to attempt to force a settlement on the cheap.  But "motions to disqualify counsel should be subjected to heightened scrutiny.  Accordingly, the moving party bears a heavy burden of proving the facts required for disqualification. . . .  [T]he courts recognize that motions to disqualify are often interposed for tactical reasons.  Courts require the party seeking disqualification of opposing counsel to meet a high standard of proof before disqualification may be granted."  *Raghavendra v. Trustees of Columbia Univ.*, 06-cv-6841, 2007 WL 9818916, at *1 (S.D.N.Y. Sept. 28, 2007) (punctuation and citations omitted).

Indeed, "[c]ourts in the Second Circuit disqualify attorneys only in essentially two kinds of cases: [i] where an attorney's conflict of interests undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly [ii] where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation."  *Akagi v. Turin Hous. Dev. Fund Co*., 13-cv-5258, 2017 WL 1076345, at *9 (S.D.N.Y. Mar. 22, 2017).  Neither circumstance applies here, and Defendant utterly fails to meet its heavy burden to disqualify counsel.

1

*First*, Defendant seeks to disqualify PA (PCC's affiliate) from entering an appearance on behalf of PCC in this case. As an initial matter, the premise of Defendant's Motion is wrong. PA has not entered, nor is it seeking to enter, an appearance in this case (or in any other case). Rather, individual attorneys on PA's payroll, not PA itself, entered appearances in the case. As the Memorandum of Law in Support of the Motion ("Mot.") admits, Adam Burton, Esq.'s name appears on the docket, and Mr. Li's name appears separately on the docket. (Mot. at 2.) So a "disqualification of PA" gets Defendant nowhere.

To the extent the Motion conflates PA with individual attorneys employed by PA, the Motion is doubly wrong. By its terms, N.Y. Judiciary Law 495 ("Rule 495") does not "prohibit a corporation or voluntary association from employing an attorney or attorneys in and about its own immediate affairs or in any litigation to which it is or may be a party." N.Y. Jud. Law § 495(5). Hence, lawyers obviously can be employed by non-law firms (else in-house counsel could not exist). And New York courts have long recognized that in-house counsel may represent clients in court. *See, e.g.*, *Hertzog, Calamari & Gleason v. Prudential Ins. Co. of Am.*, 850 F. Supp. 255, 255 (S.D.N.Y. 1994). Mr. Burton appeared in this case on behalf of PCC on August 7, 2023 (ECF No. 15), weeks before Defendant brought this motion. Mr. Burton has been a member of the bar of the State of New York since 2004 and a member of the bar of this Court since 2005. Mr. Burton, whilst a PA employee, has represented PCC and PCC affiliates in courts around the United States for the past ten years, including in numerous cases before this Court. Without dispute from anyone, Mr. Burton was not involved in the negotiation of the transaction or contracts at issue in this case and is not a fact witness. There is no conflict of interest that could possibly "undermine the court's confidence in the vigor of [Mr. Burton's] representation of his client," and Mr. Burton is not "potentially in a position to use privileged information concerning the other side through prior

representation," *Akagi*, 2017 WL 1076345, at *9, and therefore no basis exists to disqualify Mr. Burton under Second Circuit precedent.

Protecting neither Defendant (since neither disqualification target has ever represented Defendant) nor the public at large (since neither disqualification target has ever held itself or himself out to the general public to perform legal services), but infringing on Plaintiff's right to choose counsel, Defendant's motion attempts to create a Rule 495 issue based on the fact that PA and PCC are not the exact same entity. That fact changes nothing. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 522.1 (defining "in-house counsel" to encompass attorneys performing services for multiple "subsidiaries and organizational affiliates"); *Margulis v Hertz Corp*., 14-cv-1209, 2017 WL 772336, at *6 (D.N.J. Feb. 28, 2017) ("[C]ompanies often centralize the provision of legal services to the entire corporate group in one in-house legal department, and can be, and often are, represented by the same in-house counsel.") (punctuation omitted). Therefore, Mr. Burton (as well as Mr. Li) can and are fully authorized to represent PCC as PCC in-house counsel in this action, even while Mr. Burton and Mr. Li are W-2 employees of PA, an organizational affiliate of PCC.

Defendant's argument that Mr. Burton and Mr. Li share legal fees with non-attorneys is a red herring with no factual basis. Rather, this argument is simply a back-handed attempt to argue the merits issue of whether fees charged by PA *corporate* lawyers in the underlying transaction are reimbursable under the contracts at issue. While this issue is better resolved in a motion on the merits, New York authorities have repeatedly held that in-house counsel may charge for transactional legal services "where the charge is no greater than the institution's cost for the services and overhead of the staff attorney." NYCLA Eth. Op. 670(89-3) (May 19, 1989) ("Regardless of the Code provision violated – be it fee splitting, aiding the unauthorized practice of law, or misrepresentation – the evil arises only when a lay agency earns a profit from the

rendition of legal services by its salaried employee."). Consistent with these principles, PA does not earn a profit, but rather applies any fees earned to reimburse overhead. (Declaration of Nathalie Dalrymple ("Dalrymple Decl."), ¶¶ 5-6.)

*Second*, Defendant moves to disqualify Mr. Li on the basis that Mr. Li is purportedly a fact witness at trial in this action. But currently pending are Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Accordingly, "it is far from clear there will be any testimony from any witnesses in this matter," and denial of the motion is warranted for that reason alone. *Raghavendra*, 2007 WL 9818916, at *1. Furthermore, Mr. Li played no role in the negotiation of the transaction or contract at issue in this case. Mr. Li's knowledge of the facts is based primarily on his representation of Plaintiff, and therefore his knowledge concerning the facts underlying Plaintiff's disputes with Defendant is necessarily the result of privileged communications about which he could not testify. *See id.* (denying motion to disqualify where counsel's knowledge of case was "based primarily on her representation of some or all of the defendants in this matter for several years. If that is the case, much, if not all, of her knowledge concerning the facts underlying plaintiff's disputes with defendants will probably, if not necessarily, be the result of privileged communications about which she could not testify."). In any case, Mr. Li anticipates taking paternity leave during the time trial is scheduled to take place, and therefore Defendant's motion is a complete waste of time.

Accordingly, Defendant's motion to disqualify is entirely without merit.

## **LEGAL STANDARD**

"[M]otions for disqualification are generally disfavored by the Second Circuit and are subjected to a high standard of proof due to the hardship disqualification may inflict on a client, who should have the right to select counsel . . . ." *Doe 1 v. JPMorgan Chase Bank, N.A.*, No. 22-

cv-10019, 2023 WL 3383724, at *1 (S.D.N.Y. May 11, 2023) (Rakoff, J.) (citation omitted). "Stripping a client of his chosen counsel has 'a serious and immediate adverse effect by denying the client his choice of counsel.' *Soc'y for Good Will to Retarded Children, Inc. v. Carey*, 466 F. Supp. 722, 724 (E.D.N.Y. 1979). Indeed, courts – which have wide discretion in deciding disqualification motions – should be 'loathe to separate a client from' chosen counsel. *In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979)." *Volpe v. Ryder*, 19-cv-2236, 2022 WL 21221, at *1 (E.D.N.Y. Jan. 3, 2022). Thus, "motions to disqualify counsel must be assessed with great caution," *Raghavendra*, 2007 WL 9818916, at *1, and "are subject to strict scrutiny." *Volpe*, 2022 WL 21221, at *1.

"[W]ith rare exceptions disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, . . . thus giving his present client an unfair advantage." *Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (citations omitted); *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 376 F. Supp. 2d 426, 428 (S.D.N.Y. 2005) (same); *see Akagi*, 2017 WL 1076345, at *9.

New York courts further recognize that "disqualification motions are often interposed for tactical reasons." *Nyquist*, 590 F.2d at 1246. "In practical terms, this means that motions to disqualify should only be granted where the court concludes that there is a 'significant risk of trial taint.'" *Volpe*, 2022 WL 21221, at *1. "[W]hen there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases." *Nyquist*, 590 F.2d at 1246.

## FACTS

### A.    Mr. Li and Mr. Burton are Members of the Bar with Extensive Experience Representing PCC

Mr. Li is an attorney in good standing licensed in the State of New York since 2007 and has been a member of the bar of this Court since 2011.  (Declaration of Jonathan Li, sworn to August 30, 2023 ("Li Decl."), ¶ 4.)  Mr. Li graduated from Harvard College in 2003 and from Georgetown University Law Center ("Georgetown Law") in 2006.  (*Id.*, ¶ 3.)  After completing two federal clerkships, Mr. Li was a litigation associate in the New York office of the law firm Gibson Dunn & Crutcher LLP from 2008 to 2012.  (*Id.*, ¶ 5.)  Mr. Li has been an employee of PA since January 2012 and has been Deputy General Counsel of PA since 2017.  (*Id.*, ¶ 6.)  Mr. Li has represented PCC and its affiliates in numerous litigations across the country, including as counsel of record in the following actions in this Court:  *Rooney et al v. Prospect Capital Management L.P. et al*, 23-cv-01753-JLR (Rochon, J.); *Triton Pacific Securities, LLC v. Mission Critical Services Corp.*, 19-cv-05789-KNF (Fox, M.J.); *Prospect Capital Corp. v. Levine Leichtman Capital Partners Inc. et al*, 18-cv-04737-VSB (Broderick, J.); *Liquid Soul Media, LLC v. Armed Forces Communications, Inc. et al*, 15-cv-07291-RA (Abrams, J.); and *Prospect Capital Corp. v. The Hanover Insurance Co.*, 13-cv-00480-ER (Ramos, J.); and as counsel of record in the following actions in New York state courts:  *Moelis & Company, LLC v. Interdent, Inc. et al*, 656444/2019; *MITY, Inc. f/k/a MITY Enterprises, Inc. v. John L Dudash III*, 650738/2019; *Arctic Energy Services, LLC v. Shane Ailport et al*, 656894/2017; *Prospect Administration LLC v. TIBCO Software Inc. et al*, 655996/2017; and *Prospect Capital Corporation v. Barry Kevin Hall*, 651673/2013.  (*Id.*, ¶ 7.)

The foregoing list does not include the many arbitrations and out-of-New York court actions in which Mr. Li performed every step of the litigation process, from pleading through trial.

(*Id*., ¶ 8.)  In none of those cases did anyone ever seek to disqualify Mr. Li from representing PCC or the PCC affiliate, on the theories now advanced by CRUSAFin here or on any other theory. (*Id*., ¶ 9.)  In Mr. Li's entire professional career (including in his eleven-plus-year tenure serving as an in-house counsel to PCC), Mr. Li has never faced even a suggestion of disqualification, on the theories now advanced by CRUSAFin here or on any other theory.  (*Id*., ¶ 10.)  Mr. Li anticipates taking paternity beginning some time in September 2023.  (*Id*., ¶ 11.)

Mr. Burton is an attorney in good standing licensed in the State of New York since 2004 and has been a member of the bar of this Court since 2005.  (Declaration of Adam Burton, sworn to August 30, 2023 ("Burton Decl."), ¶ 4.)  Mr. Burton graduated from the University of Georgia in 2000 and from Georgetown Law in 2004.  (*Id*., ¶ 3.)  Mr. Burton was a litigation associate in the New York office of White & Case LLP from 2004 to 2012, after which he joined PA as litigation counsel.  (*Id*., ¶¶ 5-6.)

Mr. Burton has represented PCC and its affiliates in cases and trials throughout the United States, including in the following actions, among others (excluding confidential arbitration proceedings):

| Case | Jurisdiction |
|------|-------------|
| Prospect Capital Corp. v. Silicon Valley Bank, Case No. 21-cv-314 | U.S. District for the Southern District of New York (Cronan, J.) |
| Prospect Capital Corp. v. Levine Leichtman Capital Partners Inc. et al, Case No. 18-cv-4737 | U.S. District for the Southern District of New York (Broderick, J.) |
| Liquid Soul Media, LLC v. Armed Forces Communications, Inc. et al., No. 1:15-cv-07291 | U.S. District for the Southern District of New York (Abrams, J.) |
| Prospect Capital Corp. v. Lathen et al., Index No. 14-156375 | Supreme Court of New York, County of New York (Bannon, J.) |

| Case | Jurisdiction |
|------|--------------|
| Project Cricket Acquisition, Inc. v. Florida Capital Partners, Inc. et al., Index No. 652524/2015 | Supreme Court of New York, County of New York (Scarpulla, J.) |
| Cricket Stockholder Rep, LLC v. USES Corp. et al., C.A. No. N17C-01-329 WCC CCLD | Superior Court of the State of Delaware |
| USES Holding Corp. v. Florida Capital Partners, Inc., C.A. No. 2018-0049-JRS | Court of Chancery of the State of Delaware |
| Prospect Capital Corp. v. Cherry Bekaert & Holland, LLP et al., 11-cvs-18317 | Superior Court of the State of North Carolina, County of Mecklenberg |
| Prospect Capital Corp. v. Nathan M. Bender et al., Civil Action No. 3:09-CV-00546 | U.S. District for the Western District of North Carolina |
| In re ESA Environmental Specialists, Inc., Case No. 07-31532 | U.S. Bankruptcy Court for the Western District of North Carolina |

(*Id.*, ¶ 7.)

In none of those cases did anyone ever seek to disqualify Mr. Burton from representing PCC or the PCC affiliate, on the theories now advanced by CRUSAFin here or on any other theory. (*Id.*, ¶ 8.) In Mr. Burton's entire professional career (including in his ten-plus-year tenure serving as an in-house counsel to PCC), Mr. Burton has never faced even a suggestion of disqualification, on the theories now advanced by CRUSAFin here or on any other theory. (*Id.*, ¶ 9.)

**B.     The Prospect Entities and Their Affiliates Share In-House Counsel**

"An in-house counsel is an attorney who is employed full time or part time in this State by a non-governmental corporation, partnership, association, or other legal entity, *including its subsidiaries and organizational affiliates*, that is not itself engaged in the practice of law or the rendering of legal services outside such organization." N.Y. Comp. Codes R. & Regs. tit. 22, § 522.1 (emphasis added).

PA is an organizational affiliate of PCC.  PCC is a publicly-traded business development company regulated under the Investment Company Act of 1940.  PCC has no employees. (Dalrymple Decl., ¶ 3.)  Prospect Capital Management, L.P ("PCM"), an investment advisor registered with the Securities Exchange Commission, manages the day-to-day business operations of PCC.  (*Id.*)  Under the Investment Company Act of 1940, "'Affiliated person' of another person means . . . [*inter alia*] (E) if such other person is an investment company [as PCC is], any investment adviser thereof [as is PCM] or any member of an advisory board thereof."  15 U.S.C.A. § 80a-2(a)(3).  PA is a wholly-owned subsidiary of PCM.  (*Id.*, ¶ 4.)  Lawyers on PA's payroll provide legal services to PCC, PCM, and their affiliates.  (*Id.*)  PCC reimburses PA for its allocable portion of overhead expenses, but PA does not earn any profits based on the services provided on behalf of PCC, including legal services.  (*Id.*, ¶¶ 5-6.)

Accordingly, PCC, PCM, PA, and their affiliates share in-house counsel pursuant to N.Y. Comp. Codes R. & Regs. tit. 22, § 522.1.

## ARGUMENT

Defendant's motion is not based on any conflict of interests or any privileged information belonging to Defendant.  *Nyquist*, 590 F.2d at 1246 (2d Cir. 1979).  Under Second Circuit precedent, the only grounds to disqualify opposing counsel based on purported ethical violations sufficient to present "significant risk of trial taint" are "[i] where an attorney's conflict of interests undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly [ii] where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation."  *Akagi*, 2017 WL 1076345, at *9.  There is no basis to argue that "PA lawyers" are incapable of vigorously representing PCC. Mr. Li and Mr. Burton have successfully represented PCC and its affiliates in litigation across the

country for the past ten years, including numerous cases in this Court, New York state court, federal and state courts in other jurisdictions, and numerous arbitration proceedings. If PCC had any doubt that Mr. Li and Mr. Burton were incapable of vigorously representing PCC, then PCC would have raised such concerns with Mr. Li and Mr. Burton long ago. PCC's choice is clear, yet Defendant seeks to strip PCC of that choice. The second ground for disqualification—where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation—is not applicable. Neither Mr. Li, Mr. Burton nor any other "PA lawyer" has ever represented Defendant.

Defendant's motion, based on neither of these grounds and instead purely tactical, thus begins on uniquely weak footing at the outset. *Gottlieb v. Simon*, No. 97 CIV. 1019 (JSR), 1998 WL 66007, at *2 (S.D.N.Y. Feb. 17, 1998) (Rakoff, J.) ("One who seeks to disqualify an adversary's counsel must satisfy 'a high standard of proof . . . for in disqualification matters [a court] must be solicitous of a client's right to freely choose his counsel.'"). "Special care should be taken where, as here, challenged counsel has not previously represented the movant." *Id.* "Disqualification of an attorney is only appropriate where there has been a clear violation of the Code of Professional Responsibility leading to a significant risk of trial taint." *Shabbir v. Pakistan Int'l Airlines*, 443 F. Supp. 2d 299, 305–06 (E.D.N.Y. 2005).

## A.    Defendant's Motion to Disqualify PA Does Not Impact the Attorneys Appearing in This Action

Nowhere in Defendant's Motion does Defendant explicitly state that Defendant is seeking to disqualify Mr. Burton. That fact alone should permit Mr. Burton to continue representing PCC in this action no matter how the Court decides to resolve all other aspects of the Motion. The fact that Mr. Burton receives his W-2 compensation from PA, and uses PA's office space at 10 East 40th Street to work and receive mail, does not give rise to any violation of Rule 495. *See* N.Y.

Comp. Codes R. & Regs. tit. 22, § 522.1 (providing that in-house attorney may be employed full time or part time by any "legal entity, including its subsidiaries and organizational affiliates, that is not itself engaged in the practice of law").  As Defendant admits, Mr. Burton's notice of appearance states he himself is appearing on PCC's behalf, with no mention of PA.  (ECF No. 15).  Likewise, when Mr. Li appeared in this case via the initial pleading (ECF No. 1), PA did not appear as an attorney or law firm.  Hence, Defendant is aiming its attack at the wrong target – even if Defendant were to succeed in disqualifying PA under Rule 495 (and Defendant should not, since PA is not acting as an attorney or as a law firm in this or any other matter), such disqualification would have no effect on Messrs. Burton and Li's ongoing representation of PCC.

Indeed, firms (law firms or otherwise) do not appear as counsel in litigations.  To take an obvious example, most big law firms employ hundreds of paralegals, administrative assistants, and other support staff.  The appearance in a litigation by a partner of a big law firm does not mean that paralegals, copy center personnel, or partners barred in other jurisdictions can appear in court to argue a case.  That is because individual lawyers (not entities) enter appearances on behalf of clients.  As the Motion admits, Mr. Burton's name appears on the docket, and Mr. Li's name appears separately on the docket.  (Mot. at 2.)  PA did not, and could not have, entered one single appearance combining both Mr. Burton's and Mr. Li's names.  Thus, the premise of Defendant's motion is nonsensical.

Defendant points to "shifting signature blocks and vague description of counsel's employers" (Mot. at 6) as somehow changing the facts or outcome.  It does not.  The designation of PA as counsel's employer in an ECF filing form (which in turn causes PA to appear in *mailing addresses* shown on the docket sheet) does not mean that PA somehow replaces Mr. Li and Mr. Burton individually as the sole lawyers representing Plaintiff in this action.  Mr. Li has SDNY Bar

Number JL1688; Mr. Burton has SDNY Bar Number AB1977; and PA has no SDNY Bar Number, obviously.[1]

**B.      There is No Basis to Disqualify So-Called "PA Lawyers" Under Rule 495**

To the extent Defendant's Motion conflates PA with Messrs. Li and Burton individually, there is still no basis to disqualify Mr. Li or Mr. Burton simply because both are employed by PA. Rule 495 provides no basis to disqualify individual members in good standing of the bars of New York State and of this Court who happen to be on PA's payroll.  Defendant cites no cases in which a court (much less a federal court in the Second Circuit) disqualified opposing counsel based on an alleged violation of Rule 495.  The most obvious reason is that Rule 495 on its face applies onto to corporations and voluntary associations, not individuals.

**1.      Rule 495 Is Not Dispositive**

In this Court, "Second Circuit precedent is the 'only truly binding authority on disqualification issues.'"  *Akagi*, 2017 WL 1076345, at *9 (citation omitted); *Prout v. Vladeck*, 316 F. Supp. 3d 784, 809 (S.D.N.Y. 2018) (Rakoff, J.) ("[N]ot every violation of a disciplinary rule will necessarily lead to disqualification.").  Therefore, local ethics rules "merely provide general guidance," and this Court must look to Second Circuit precedent to determine whether disqualification is appropriate.  *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005).

---

[1] While Mr. Li's more prominent reference to PA in certain discovery documents could have been clearer on this point, the notices of appearance control, and each such notice (Mr. Li in the Complaint and Mr. Burton at ECF No. 15) affirms that the attorneys entering appearance are only Mr. Li and Mr. Burton, not PA.  Even if Mr. Li's reference to PA in certain discovery documents could be deemed a "limited misstep," such "limited misstep hardly warrants the drastic remedy of disqualification."  *M.K.B. v. Eggleston*, 414 F. Supp. 2d 469, 472 (S.D.N.Y. 2006) (Rakoff, J.).

## 2.    Mr. Burton and Mr. Li Have Not Violated Rule 495

Even if Rule 495 were deemed to apply (and it does not), the express terms of Rule 495(5)

provide the common-sense rule that a corporation may employ in-house counsel "in and about its

own immediate affairs or in any litigation to which it is or may be a party."  N.Y. Jud. Law §

495(5).  Obviously, Messrs. Burton and Li are not corporations, but rather attorneys in good

standing licensed in this State and this Court with extensive experience representing PCC and PCC

affiliates in court.  There is no ethical prohibition on such in-house counsel appearing in court to

defend the interests of the corporation or its affiliates.  *See, e.g.*, *Video-Cinema Films, Inc. v. Cable*

*News Network, Inc.*, 98-cv-7128, 2004 WL 213032, at *6 (S.D.N.Y. Feb. 3, 2004) (recognizing

propriety of in-house counsel appearing in court).  And the fact that PA and PCC are organization

affiliates under N.Y. Comp. Codes R. & Regs. tit. 22, § 522.1 means that Messrs. Burton and Li

and be on PA's payroll and still be considered in-house counsel for PCC.  *See Margulis*, 2017 WL

772336, at *6 ("[C]ompanies often centralize the provision of legal services to the entire corporate

group in one in-house legal department, and can be, and often are, represented by the same in-

house counsel.") (punctuation omitted).[2]

Like most other corporations, "PA lawyers" represent both PA and its affiliates, including

PCC, as it would make no sense to employ different in-house counsel for each separate entity.  *See,*

*e.g.*, *Margulis*, 2017 WL 772336, at *6.  As discussed above, Facts, B., *supra*, PA is an

---

[2] Defendant's citation to non-lawyer Edward Shuman's deposition testimony for the proposition
that PCC does not "have its own in-house counsel" (Mot. at 2) is not dispositive.  The topic of
PCC's in-house counsel relationships was not a topic noticed in Mr. Shuman's Rule 30(b)(6)
deposition, so Mr. Shuman's speculative testimony of "I don't think so" when asked, "Does
Prospect Capital Corporation have its own in-house attorneys?", is not binding on PCC.  When
asked the same question at his deposition, Mr. Li's answer was "Not separate from the lawyers
employed by Prospect Administration."  (Li Decl., ¶ 14 and Ex. 1 at 23:17-20.)  Therefore, Mr.
Li's correct answer recognizes, in accordance with N.Y. Comp. Codes R. & Regs. tit. 22, § 522.1,
that organizational affiliates can and do share in-house counsel.

organizational affiliate of PCC.  Accordingly, PCC, PCM, PA, and their affiliates share in-house

counsel, and Messrs. Burton and Li can properly be considered in-house counsel for any of these

affiliate companies, in full accordance with Rule 495(5).[3]  In any event, only Mr. Burton and Mr.

Li, not PA, are acting as attorneys for PCC in this action.  PA itself is neither an attorney nor a law

firm.  Because there is no corporation or voluntary association practicing law in this case, there is

no violation of Rule 495.

Accordingly, there is no basis to disqualify Mr. Li, Mr. Burton, or any other "PA lawyer"

under Rule 495.

### 3.    Defendant's "Fee-Splitting" Argument is a Red Herring

Defendant next argues, with no factual support, that Mr. Burton and Mr. Li share legal fees

with non-lawyers and should therefore be disqualified from representing PCC in this case.   Again,

Defendant offers no precedent in the Second Circuit (or any other jurisdiction) in which a court

disqualified opposing counsel for allegedly sharing fees with non-lawyers.  Defendant's argument

is in substance a premature argument relating to the merits of the in-house fees Plaintiff seeks to

recover relating to work performed by PA transactional attorneys in negotiating the transaction.

But in any case, there is no sharing of fees in violation of Rule 495.

Mr. Burton and Mr. Li are dedicated litigators.  New York courts routinely award in-house

litigants attorney fees without any violation of Rule 495.  Indeed, in the Second Circuit "[i]t is

well-settled that attorneys' fees and costs should be awarded for litigation performed by in-house

counsel if such fees would be awarded for the same work performed by outside counsel."  *Video-*

*Cinema Films*, 2004 WL 213032, at *6; *see also, Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d

---

[3] PA lawyers do not represent any clients other than PCC, PCM, or their respective affiliates and subsidiaries (Li Decl., ¶ 12) – all covered under N.Y. Comp. Codes R. & Regs. tit. 22, § 522.1.

437, 458 (S.D.N.Y. 2011) (awarding fees to in-house counsel); *Broad. Music, Inc. v. R Bar of Manhattan, Inc*., 919 F. Supp. 656, 661 (S.D.N.Y. 1996) ("Attorney's fees may be awarded for the work of in-house counsel, and an hourly rate based on an estimate of the fee charged by independent counsel for similar services can provide a reasonable basis for calculating such an award if other relevant criteria are satisfied."); *Browning v. Peyton*, 123 F.R.D. 75 (S.D.N.Y. 1988) (award of attorney fees for successful motion during discovery can include services rendered by party's in-house counsel).  Thus, there is no basis to conclude that fees earned by in-house litigators are somehow inappropriate under Rule 495.

With respect to transactional attorneys, New York courts and ethics authorities have repeatedly advised that it is perfectly appropriate for in-house counsel to charge fees so long as the amount charged is used to reimburse overhead, rather than to earn a profit for the corporate employer.  *See* NYC Eth. Op. 1994-6 (May 5, 1994); NYCLA Eth. Op. 670(89-3) (May 19, 1989). As the New York County Lawyers' Association Committee on Professional Ethics put it, the rule against fee-sharing applies only where a corporation earns a profit from the lawyer's services:

> Regardless of the Code provision [allegedly] violated – be it fee splitting, aiding the unauthorized practice of law, or misrepresentation – the evil arises only when a lay agency earns a profit from the rendition of legal services by its salaried employee.  As was first stated by the American Bar Association in 1926, a lawyer "may not properly accept employment from a lay intermediary with the knowledge that such lay intermediary is profiting, or expecting to profit, from his professional services." ABA 10 (1926).  However, the same rationale does not apply where the charge is no greater than the institution's cost for the services and overhead of the staff attorney.

Legal Fees; Charging for Legal Expenses of in-House Laws., NYCLA Eth. Op. 670(89-3) (May 19, 1989).  Here, as clearly stated in PCC's public filings, PA does not earn profits, and therefore Rule 495 is inapplicable.  (Dalrymple Decl., ¶¶ 5-6.)  Nor can PA be found to violate Rule 495

merely for charging and collecting fees. *Fuchs v. Wachovia Mortg. Corp.*, 41 A.D.3d 424, 425, 838 N.Y.S.2d 148, 149 (2d Dep't 2007).

Moreover, the rates charged by PA transactional attorneys relating to the transaction at issue are far lower than prevailing rates charged by outside counsel, ultimately benefiting CRUSAFin. "[I]f in-house counsel had not participated in the legal work, the workload and consequently the fee of outside counsel would have proportionately increased. There [is] no reason . . . that defendant should benefit financially from plaintiff's decision to use its own legal department" in the underlying transaction. *Travelers Ins. Co. v. Commissioners of State Ins. Fund*, 227 A.D.2d 208, 209 (1st Dep't 1996) (awarding fees to in-house counsel) (punctuation and citations omitted). Defendant unambiguously agreed to pay Plaintiff's "internal and external" legal fees in the work letter, which was negotiated by Defendant's counsel, DLA Piper. Defendant is a sophisticated financial institution represented by sophisticated counsel. Although this issue is premature, the Court should require Defendant to honor the bargain it made.

**C.    Mr. Li is Not a Necessary Fact Witness, Even if This Case Proceeds to Trial**

Defendant seeks to disqualify Mr. Li pursuant to Rule 3.7(a)[4] of the New York Rules of Professional Conduct on the erroneous ground that Mr. Li is a necessary fact witness in this case. Indeed, Defendant evidently took Mr. Li's deposition apparently for the sole purpose of attempting to establish grounds for Mr. Li's disqualification rather than to establish any material facts relating to this case. There is no basis to disqualify Mr. Li, but in any case Mr. Li plans to take paternity leave during the pendency of the scheduled trial dates. Accordingly, this motion is a complete waste of time—erroneously disregarding "the concerns already noted about the potential disruption occasioned by disqualification motions and the desire to honor a client's choice of

---

[4] Defendant does not move under Rule 3.7(b) to disqualify either Mr. Li or PA.

counsel if possible", *Rosewood Apartments Corp. v. Perpignano*, 99-cv4226, 2000 WL 145982, at *7 (S.D.N.Y. Feb. 7, 2000)"—and should be denied.

As an initial matter, the "Second Circuit in particular has repeatedly indicated that [the New York disciplinary rules] are not to be rigidly applied." *Finkel v. Frattarelli Bros.*, 740 F. Supp. 2d 368, 374 (E.D.N.Y. 2010) (quoting *Renner v. Townsend Financial Services Corp.*, No. 98-cv-926, 2002 WL 1013234, at *6 (S.D.N.Y. May 20, 2002)). In particular, because "Rule 3.7 lends itself to opportunistic abuse," as exemplified by the instant motion, the Second Circuit has cautioned that "courts must guard against the tactical use of motions to disqualify counsel" by subjecting them "to fairly strict scrutiny." *Murray v. Metro Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (internal citations omitted). Here, because (i) Plaintiff will not affirmatively be calling Mr. Li as a witness at trial, if any, and (ii) the trial, if any, will be a bench trial, Rule 3.7 should be even less rigidly applied (if at all). "Disqualification under [Rule 3.7(a)] is triggered only when the attorney actually serves as an advocate *before the jury*." *Finkel*, 740 F. Supp. 2d at 373 (emphasis added). It is highly unlikely that this Court as factfinder would be subject to the same risk that "the jury's ability to find facts is undermined." *Id.*

Even if this Court nonetheless decided to apply Rule 3.7(a) to this entirely non-jury proceeding, Defendant's motion makes no showing, as required by controlling case law where "only the moving party intends to call the adversary's attorney as a witness," that "the testimony given by counsel is necessary" and "there is a substantial likelihood that the testimony would be prejudicial to the witness-advocate's client" *Id.* (internal quotation marks omitted); *John Wiley & Sons, Inc. v Book Dog Books, LLC*, 126 F. Supp. 3d 413, 419 (S.D.N.Y. 2015); *Aquino v. Alexander Cap., LP*, 21-cv-1355, 2021 WL 6427620, at *1 (S.D.N.Y. Dec. 21, 2021) (Rakoff, J.)

(movant must carry "heavy burden of proof required to prevail on a motion to disqualify opposing counsel") (internal brackets and quotation marks omitted).

### 1. Mr. Li's Testimony Is Not Necessary at a Forthcoming Bench Trial Even Assuming No Summary Judgment Is First Granted

"When considering the 'necessity' prong of the disqualification inquiry, '[a] court should examine factors such as the significance of the matters, weight of the testimony, and availability of other evidence." *John Wiley*, 126 F. Supp. 3d at 421-22 (citation omitted). "The rule requires that a lawyer's testimony be necessary, not simply that it be the best evidence, and to that end, courts deem a lawyer's testimony necessary only if there [are] no other witnesses to the circumstances at issue." *Solow v. Conseco, Inc.*, 2007 WL 1599151, at *4 (S.D.N.Y. June 4, 2007) (citation and internal quotation marks omitted) (alteration in original).

Defendant's Motion relies on nothing more than the fact that Mr. Li was an authorized corporate signatory of the two contracts at issue in the case. But that single fact does not render Mr. Li a necessary witness. In *Hewlett-Packard Fin. Servs. Co. v. New Testament Baptist Church*, 18-cv-10230, 2019 WL 3800234 (D.N.J. Aug. 13, 2019), the court agreed with plaintiff that a witness was "not necessary for adjudication because [he] is only identified as a signatory, not a negotiator." *Id.*, at *6.

Here, even assuming any extrinsic evidence were necessary in the event the Court were eventually to find ambiguity in the underlying contract (which this Court should not), Defendant does not come close to showing that any such extrinsic evidence in the form of Mr. Li's trial testimony is necessary. Plaintiff does not intend to call Mr. Li as a witness at trial, if any. Mr. Li did not have any role in negotiating the agreements. (Li Decl., ¶ 13.) Mr. Li did not draft any portion of the agreements. (*Id.*, ¶ 14 and Ex. 1 at 25:25-26:3, 35:4-8.) Mr. Li testified that he provided limited legal advice (*id.* at 35:12-16), signed the contract as an authorized signatory (*id.*

at 34:21-23), and that his knowledge of other terms – such as the "deposits against expenses" term cited in Defendant's Motion – came solely as a result of his role "as the litigator who wrote this [demand] letter and prepared the complaint." (*Id.* at 52:2-16, 38:23-39:17.)

In contrast to Mr. Li, Mr. Shuman testified that he was the person who negotiated and approved the terms of the contracts on behalf of PCC. (Li Decl., ¶ 14 and Ex. 2 at 66:18-20; 70:7-18.) Accordingly, since Mr. Shuman is available to testify at trial, Mr. Li's testimony is not necessary since the trial of this case will not require Mr. Li's testimony. Defendant's argument that Mr. Li only "glanced" at the agreements (Mot. at 10) (even assuming that argument is not a mischaracterization of Mr. Li's actual testimony, which it is) – especially where, as here, they contain integration clauses – supports Plaintiff's position and weakens Defendant's. Where the attorney "avers that he has no knowledge or information bearing on the issue about which he would allegedly be called to testify," this Court "den[ies] defendant's motion to disqualify plaintiffs' counsel." *Intelsat, Ltd. v. Int'l Telecommunications Satellite Org.*, 06-cv-10165, 2007 WL 844816, at *2 (S.D.N.Y. Mar. 16, 2007) (Rakoff, J.).

Defendant's reliance on the doctrine of "meeting of the minds" is completely inapposite. Defendant cites no authority (because there is none) for the bizarre proposition that only what is in the mind of the signatories can establish "meeting of the minds." Indeed, Defendant's position "entirely ignores the fundamental principle of contract law that a binding contract requires an objective, outwardly-manifested meeting of the minds, not a subjective, internally-recognized harmony." *G.C. Williams & Co. v. Superior Nut Co.*, 90-cv-7821, 1995 WL 761287, at *6 (S.D.N.Y. Dec. 23, 1995) ("Judge Learned Hand articulated this principle long ago, declaring that: 'It makes not the least difference whether a promisor actually intends that meaning which the law will impose upon his words. The whole House of Bishops might satisfy us that he had intended

19

something else, and it would make not a particle of difference in his obligation.'") (citation omitted); *see also Summit Health, Inc. v. APS Healthcare Bethesda*, 993 F. Supp. 2d 379, 397 (S.D.N.Y. Jan. 24, 2014) ("The defense [of no meeting of the minds] fails, and the subjective intent of the parties is irrelevant, if the contract is unambiguous.") (citing *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1278 (2d Cir. 1989)).  Therefore, what Mr. Li might or might not have thought in his own mind is not the test for "meeting of the minds."  Moreover, Defendant already admitted in discovery that the contract at issue is binding on Defendant.  (Li Decl., ¶ 14 and Ex. 3 (Defendant's Response to Request for Admission), No. 3.)  And Mr. Shuman negotiated the contract on Plaintiff's behalf and will testify at trial (if necessary) about the meeting of the minds evidenced by the pertinent writings.

### 2.    Mr. Li's Testimony Does Not Create Substantial Prejudice at a Forthcoming Bench Trial Even Assuming No Summary Judgment Is First Granted

"'Prejudice' in this context means testimony that is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'"  *Murray*, 583 F.3d at 178 (citing *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989)).

> "As this definition suggests, the showing of prejudice is required as a means of proving the ultimate reason for disqualification: harm to the integrity of the judicial system. We have identified four risks that Rule 3.7(a) is designed to alleviate: (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused."

*Id*.

None of four risks identified by the Second Circuit are present here, especially since PCC does not intend to call Mr. Li as witness.  Even if extrinsic evidence were to be offered at trial, if

any, Defendant fails to explain how or why a signatory allegedly only "glancing" at portions of the contract would in any way be adverse (much less sufficiently adverse) to the integration clause or Mr. Shuman's testimony that there was a meeting of the minds, thereby resulting in the substantial prejudice required by controlling case law.  Instead, Defendant invites the court to "speculate that if called to testify, [Mr. Li] might contradict . . . testimony given by [Mr. Shuman]; however, the case law is clear that allegations based on conjecture do not suffice.  *Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*, 07-cv-7983, 2014 WL 1201905, at *9 (S.D.N.Y. March 24, 2014) (citations omitted); *Acker v Wilger*, 12-cv-3620, 2013 WL 1285435, at *3 (S.D.N.Y. Mar. 29, 2013) (denying disqualification motion where movant failed to "show, that [lawyer]'s testimony would differ from Plaintiff's, or that any difference would be substantially prejudicial to Plaintiff, two key components of the disqualification analysis").

Accordingly, the fact that Mr. Li "is Plaintiff's only signatory" on the agreements in dispute renders Mr. Li neither necessary nor prejudice-creating as a fact witness.  Mr. Shuman, the non-lawyer deal lead on this matter, served as Plaintiff's Rule 30(b)(b) deponent and was the PCC person who negotiated the contracts.  The "availability of other witnesses is essentially fatal to the 'necessity' prong of the disqualification inquiry."  *Aquino*, 2021 WL 6427620, at *1 (citation omitted).  As for substantial prejudice (or in this case, the total lack thereof), because Mr. Li's subjective state of mind has no bearing on the contractual doctrine of "meeting of the minds", none of Mr. Li's deposition testimony cited in Defendant's motion has any impact, much less adverse legal or factual impact, on Plaintiff's allegations and positions in this action.  Moreover, because Mr. Li's testimony would not be inconsistent with Mr. Shuman's, and any difference would not be substantially prejudicial to Plaintiff or anyone else, Defendant has failed to carry its heavy

21

burden to show substantial prejudice to anyone or that the integrity of the judicial system would in any way be undermined.

### 3.   Because the Court May Grant Plaintiff's Motion for Summary Judgment, Defendant's Motion is Premature

"The 'witness-advocate rule is concerned with preventing potential taint <u>at trial</u>.' Thus, 'where there has been only limited discovery and it is not yet clear the extent to which an attorney's testimony might be necessary or prejudicial, numerous courts have found that motions to disqualify counsel are premature.'" *Prout*, 316 F. Supp. 3d at 809–10 (original emphasis; citations omitted). "[W]hile such dangers may also arise in the pre-trial context, they are less likely to do so." *Cartier, a Div. of Richemont N. Am., Inc. v. Bertone Grp., Inc.*, 404 F. Supp. 2d 573, 574-75 (S.D.N.Y. 2005) (Rakoff, J.) ("the Court perceives no reason why it should not defer ruling on the disqualification issue until if and when it becomes ripe").

### 4.   Mr. Li's Pending Paternity Leave May Moot This Motion as to Mr. Li

While the foregoing discussion furnishes ample reason for this Court to deny Defendant's motion on the merits, Mr. Li's impending paternity leave will likely cause him to be unable to appear as trial counsel in this matter, thereby mooting this matter. *See, e.g.*, *Gormin v Hubregsen*, 08-cv-7674, 2009 WL 508269, at *3 (S.D.N.Y. Feb. 27, 2009) ("Here, there appears to be little risk to the trial process, because Defendants have already represented that Greenwald will not appear as trial counsel in this matter. This concession largely, if not completely, eliminates the concerns about 'trial taint.'"). Accordingly, there is no reason for the Court to disqualify Mr. Li.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's

motion to disqualify.

Dated: New York, New York
       August 30, 2023

                                   Respectfully submitted,


                                    /s/ Adam M. Burton
                                  Adam M. Burton, Esq.
                                  Jonathan J. Li, Esq.
                                  10 East 40th Street, 45th Floor
                                  New York, New York 10016
                                  (646) 845-6060

                                  *Counsel for Plaintiff Prospect Capital Corporation*