**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| PROSPECT CAPITAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-CV-3005 (JSR) |
| vs. | ) | |
| | ) | |
| CREDITO REAL USA FINANCE LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Jonathan J. Li
Adam Burton
10 E 40th Street, 45th Floor
New York, New York 10016
(646) 845-6060
jli@prospectstreet.com
aburton@prospectstreet.com

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................1

LEGAL STANDARD.............................................................................................4

ARGUMENT .........................................................................................................6

    I.      The Agreement is a Binding Contract Between the Parties…………………………..6

    II.     Plaintiff Performed the Agreement……………………………………………………6

    III.    Defendant Breached the Agreement……………………………………………………6

          A.  There is No Ambiguity in the Agreement………………………………..….7

          B.  Defendant Cannot Twist the Evidence to Deny Existence of PSEC's Multiple Written Requests……………………………………………………………9

    IV.    Defendant's Breach Caused Plaintiff Damages in the Amount of $157,795.30, Plus Interest...……………………………………………………………………..11

          A.  Plaintiff Incurred Over $150,000 in Unpaid Expenses…………………………..11

          B.  Defendant Owes Plaintiff Statutory Interest .........................................................14

CONCLUSION......................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*159 MP Corp. v. Redbridge Bedford, LLC*,
    33 N.Y.3d 353 (2019) .................................................................................................. 5, 14

*Am. Dev. Grp., LLC v. Island Robots of Fla.*,
    17-CV-3223, 2019 WL 5790265 (E.D.N.Y. Oct. 4, 2019) ......................................... 11

*Banos v. Rhea*,
    25 N.Y.3d 266 33 N.E.3d 471 (2015) ........................................................................ 10

*Bazak Int'l Corp. v. Tarrant Apparel Grp.*,
    378 F. Supp. 2d 377 (S.D.N.Y. 2005) .......................................................................... 9

*Brad H. v. City of New York*,
    17 N.Y.3d 180 951 N.E.2d 743 (2011) .................................................................. 5, 7, 9

*Broad. Music, Inc. v. R Bar of Manhattan, Inc.*,
    919 F. Supp. 656 (S.D.N.Y. 1996) ............................................................................. 12

*Browning v. Peyton*,
    123 F.R.D. 75 (S.D.N.Y. 1988) .................................................................................. 13

*CSX Transp., Inc. v. Emjay Env't Recycling, Ltd.*,
    12-CV-1865 JS AKT, 2014 WL 4175798 (E.D.N.Y. Aug. 20, 2014) ........................ 4

*Dish Network Corp. v. Ace Am. Ins. Co.*,
    21 F.4th 207 (2d Cir. 2021) ....................................................................................... 10

*Ediciones Quiroga, S.L. v. Fall River Music, Inc.*,
    93 CIV. 3914 (RPP), 1995 WL 366287 (S.D.N.Y. June 20, 1995) ........................... 11

*Genger v. Genger*,
    76 F. Supp. 3d 488 (S.D.N.Y. 2015) ........................................................................... 4

*Gillette v. Meyers*,
    42 A.D.3d 654 (3d Dep't 2007) ................................................................................. 11

*In re Enron Creditors Recovery Corp.*,
    380 B.R. 307 (S.D.N.Y. 2008) .................................................................................... 8

*L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*,
  595 F.3d 458 (2d Cir. 2010) ............................................................................ 5

*Logalbo v. Plishkin, Rubano & Baum*,
  163 A.D.2d 511 (2d Dep't 1990) .................................................................... 11

*Mastrovincenzo v. City of New York*,
  435 F.3d 78 (2d Cir. 2006) ............................................................................... 8

*Medidata Sols., Inc. v. Fed. Ins. Co.*,
  268 F. Supp. 3d 471 (S.D.N.Y. 2017) ........................................................... 8

*Moskowitz v. Principal Life Ins. Co.*,
  21-CV-3030-LTS, 2023 WL 4865721 (S.D.N.Y. July 31, 2023) ............... 5

*Petrisch v. JP Morgan Chase*,
  789 F. Supp. 2d 437 (S.D.N.Y. 2011) ........................................................ 12

*Regency Equities Corp. v. Reiss*,
  No. 93 CIV. 8096 (CSH), 1995 WL 362496 (S.D.N.Y. June 16, 1995) ..... 9

*Stanford Square, L.L.C. v. Nomura Asset Cap. Corp.*,
  232 F. Supp. 2d 289 (S.D.N.Y. 2002) ........................................................ 14

*Travelers Ins. Co. v. Commissioners of State Ins. Fund*,
  227 A.D.2d 208 (1st Dep't 1996) ................................................................ 14

*Tycoons Worldwide Grp. (Thailand) Pub. Co. v. JBL Supply Inc.*,
  721 F. Supp. 2d 194 (S.D.N.Y. 2010) .......................................................... 4

*Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*,
  7 F.4th 50 (2d Cir. 2021) ............................................................................. 12

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
  127 F. Supp. 3d 156 (S.D.N.Y. 2015) .......................................................... 8

*Wrights Mill Holdings*,
  127 F. Supp. 3d at 173 ............................................................................ 8, 12

**Rules**

N.Y. CPLR § 5001 ......................................................................................... 14
N.Y. CPLR § 5004(a) ..................................................................................... 14
NYC Eth. Op. 1994-6 (May 5, 1994) ............................................................ 13

## PRELIMINARY STATEMENT

This is a straightforward breach of contract case. Defendant "agree[d] to promptly wire additional deposits" to Plaintiff in connection with Plaintiff's "accounting, consulting, travel, due diligence, internal and external legal and tax, and other expenses (collectively, 'Expenses') incurred, being incurred and to be incurred in connection with evaluating the Transaction and preparing documentation related to the Transaction." Defendant failed to do so, leaving Plaintiff with over $150,000 in Expenses that Plaintiff incurred in connection with evaluating the Transaction, as each capitalized term is defined in the written contract. Accordingly, Defendant has breached the contract and owes Plaintiff $157,795.30, plus statutory interest, in damages.

Defendant's obligation to pay is unambiguous. Defendant attempts to inject ambiguity into the contract by arguing that "deposits" means Plaintiff was required to request and receive funds from Defendant *before* incurring expenses. But the plain language of the contract imposes no such temporal or contingent restriction on Plaintiff, as "Expenses" means "expenses . . . *incurred*, being incurred and to be incurred in connection with evaluating the Transaction and preparing documentation related to the Transaction" (emphasis added). In turn, the Agreement explicitly provides that "deposits" may be applied against both expenses Plaintiff already incurred in addition to expenses yet to be incurred. Accordingly, Defendant has no defense for non-payment as a matter of law, and the Court should grant summary judgment in Plaintiff's favor.

## STATEMENT OF FACTS

Plaintiff Prospect Capital Corporation ("PCC" or "Plaintiff") and Defendant Credito Real USA Finance LLC ("CRUSAFin" or "Defendant") entered into a letter agreement dated June 6, 2022, providing initially for the payment by CRUSAFin of a $150,000 deposit to reimburse PCC and PCC's affiliates (defined collectively in the letter agreement as "PSEC") for evaluating a potential purchase by PSEC of CRUSAFin's parent company's equity interests in CRUSAFin (the

"Transaction").    (Plaintiff's Local Rule 56.1(a) Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment ("Rule 56.1 Statement"), ¶ 1.)  CRUSAFin wired to PSEC this first tranche of $150,000 on June 21, 2022.  (*Id.*, ¶ 2.)

PCC and CRUSAFin thereafter entered into an amended and restated letter agreement (the "Agreement") dated July 12, 2022 to provide, with respect to PSEC's additional expenses incurred in doing ongoing evaluative work in connection with the Transaction, (i) CRUSAFin's payment of a second $150,000 amount and (ii) PSEC's unconditional right to request and receive additional amounts to make PSEC whole, reflected by the parties' explicit addition of the sentence in which CRUSAFin "agrees to promptly wire additional deposits." (*Id.*, ¶¶ 3-4.)  The Agreement contains an integration clause and a New York choice-of-law clause.  (*Id.*, ¶ 9.)  On July 12, 2022, PCC and CRUSAFin fully executed the Agreement.  (*Id.*, ¶ 10.)  CRUSAFin wired to PSEC the second tranche of $150,000 on July 13, 2022.  (*Id.*, ¶ 13.)

Between July and November 2022, PSEC continued to evaluate and perform diligence on CRUSAFin with CRUSAFin's knowledge and consent.  (*Id.*, ¶ 14.)

In an email dated August 1, 2022, PSEC requested a third tranche of $150,000 from CRUSAFin in accordance with the terms of the Agreement and for PSEC's incurrence of additional fees and costs to evaluate the Transaction.  (*Id.*, ¶ 15.)  Despite inducing PSEC to continue doing evaluative work, CRUSAFin failed to wire the requested additional amount to PSEC.  (*Id.*, ¶ 21.)  At no time did CRUSAFin direct PSEC to stop working or terminate PSEC's pursuit of the Transaction.  (*Id.*, ¶ 20.)

PSEC reiterated its request for an additional deposit in an email dated August 8, 2022.  (*Id.*, ¶ 19.)  CRUSAFin still failed to wire the requested additional amount to PSEC.  (*Id.*, ¶ 21.)

PSEC renewed its written request for an additional deposit in an email dated February 9, 2023. (*Id.*, ¶ 24.) CRUSAFin still failed to wire the requested additional amount to PSEC. (*Id.*, ¶ 25.)

In performing its additional evaluative work through November 2022, PSEC incurred $157,795.30 of expenses net of the $300,000 previously wired by CRUSAFin in accordance with the June 6, 2022 and July 12, 2022 agreements, broken down as follows (*id.*, ¶ 26):

a. $160,868.21 of fees and costs invoiced by Olshan Frome Wolowksy LLP, an outside law firm, for documentation preparation and other legal work (discounted from $229,811.73 through additional cost-saving efforts undertaken by PSEC) (*id.*, ¶ 26(a));

b. $158,121.00 of fees and costs invoiced by BDO, an outside accounting firm, for preparing a Quality of Earnings report and conducting related financial due diligence (*id.*, ¶ 26(b));

c. $23,000.00 of fees and costs invoiced by Wipfli LLP, a financial services consulting firm, for performing tax-related due diligence (*id.*, ¶ 26(c));

d. $31,444.50 of fees and costs invoiced by Hudson Cook, LLP, a consumer financial services law firm, for performing regulatory diligence (*id.*, ¶ 26(d));

e. $34,077.52 of fees and costs invoiced by BMK Solutions, LLC d/b/a RootLogik for performing IT due diligence (*id.*, ¶ 26(e));

f. $48,048.00 of fees invoiced by Prospect Administration, LLC, the administrator of PSEC, for legal work performed by PSEC in-house lawyers (*id.*, ¶ 26(f)); and

g. $2,236.07 of other out-of-pocket costs for, *e.g.*, travel and meal expenses incurred by PSEC investment professionals (*id.*, ¶ 26(g)).

PSEC incurred all of the foregoing expenses in connection with evaluating the potential Transaction.  (*Id.*, ¶ 27.)

## LEGAL STANDARD

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.'  Fed.R.Civ.P. 56(c)."  *Tycoons Worldwide Grp. (Thailand) Pub. Co. v. JBL Supply Inc.*, 721 F. Supp. 2d 194, 198 (S.D.N.Y. 2010).  "The moving party must demonstrate that no genuine issue exists as to any material fact."  *Id.*  "If the moving party satisfies its burden of proof, the 'non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial.'"  *Id.* (citations omitted).  "In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial."  *Id.*

"Under New York law, which governs plaintiff's breach of contract claim against [Defendant] in this diversity action, a breach of contract claim requires proof of:  (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."  *Id.* at 201-02 (collecting cases granting and affirming summary judgment to plaintiff claiming breach of contract).  Where "all of the elements of [Plaintiff's] breach of contract claim are satisfied, . . . summary judgment [should be] granted in [Plaintiff's] favor."  *Genger v. Genger*, 76 F. Supp. 3d 488, 502 (S.D.N.Y. 2015); *CSX Transp., Inc. v. Emjay Env't Recycling, Ltd.*, 12-CV-1865 JS AKT, 2014 WL 4175798, at *10 (E.D.N.Y. Aug. 20, 2014) ("Accordingly, the Court finds that Plaintiff has met all of the necessary elements sufficient to grant summary judgment in its favor on its

second counterclaim—there was a valid contract, pursuant to which Plaintiff performed its obligations, which Defendant materially breached, causing damages.").

"New York courts interpret contracts based on their plain meaning and, when a contract's terms are unambiguous, courts apply them as written, without considering any extrinsic evidence." *Moskowitz v. Principal Life Ins. Co.*, 21-CV-3030-LTS, 2023 WL 4865721, at *3 (S.D.N.Y. July 31, 2023). "Ambiguity is determined within the four corners of the document; it cannot be created by extrinsic evidence that the parties intended a meaning different than that expressed in the agreement and, therefore, extrinsic evidence 'may be considered only if the agreement is ambiguous.'" *Brad H. v. City of New York*, 17 N.Y.3d 180, 186, 951 N.E.2d 743, 746 (2011). "The matter of whether the contract is ambiguous is a question of law for the court." *L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010). "[I]f the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Id.* at 468.

Indeed, "[f]reedom of contract is a 'deeply rooted' public policy of this state and a right of constitutional dimension. In keeping with New York's status as the preeminent commercial center in the United States, if not the world, our courts have long deemed the enforcement of commercial contracts according to the terms adopted by the parties to be a pillar of the common law. Thus, freedom of contract prevails in an arms-length transaction between sophisticated parties, and in the absence of countervailing public policy concerns there is no reason to relieve them of the consequences of their bargain." *159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353, 359 (2019) (punctuation and citations omitted).

## ARGUMENT

### I.    The Agreement is a Binding Contract Between the Parties

Defendant admits that the Agreement is a contract binding on Defendant.  (Rule 56.1 Statement, ¶ 12.)

### II.    Plaintiff Performed the Agreement

Defendant admits that Plaintiff performed all of Plaintiff's obligations in the Agreement. (*Id.*, ¶ 30.)

### III.    Defendant Breached the Agreement

The key term in the Agreement—added because the parties agreed that PSEC would be made whole for expenses incurred, unconditionally and without cap[1]—reads as follows:  "At PSEC's written request (which may be delivered by email), the Company agrees to promptly wire additional deposits to PSEC (each, an '<u>Additional Deposit</u>', and together with the Initial Work Fee, the '<u>Deposits</u>') against Expenses in excess of the Initial Work Fee."[2]  "<u>Expenses</u>" means "PSEC's accounting, consulting, travel, due diligence, internal and external legal and tax, and other expenses . . . incurred, being incurred and to be incurred in connection with evaluating the Transaction and preparing documentation related to the Transaction."  (Rule 56.1 Statement, ¶ 5.)

It is undisputed that the Expenses were "in connection with evaluating the Transaction and preparing documentation related to the Transaction."  (*Id.*, ¶ 27.)  It is also undisputed that PSEC made a written request for additional deposits on each of August 1 and August 8, 2022.  (*Id.*, ¶¶

---

[1] Edward Shuman, the deal lead at PCC on this matter, wrote to PCC in-house counsel in a July 8, 2022 email requesting an initial draft of the Agreement, "Justin, can we convert this [*i.e.*, the June 6, 2022 agreement] into a new work letter that provides for another $150k deposit, with *additional deposits as needed to cover all our expenses*?"  (Rule 56.1 Statement, ¶ 4 (emphasis added).)

[2] The Agreement defines the following capitalized words in the foregoing sentence as follows:  (1) "<u>PSEC</u>" means Plaintiff Prospect Capital Corporation and affiliates; (2) "<u>Company</u>" means Defendant Credito Real USA Finance, LLC; and (3) "<u>Initial Work Fee</u>" means "a fully-earned, non-refundable work fee in the amount of $150,000".  (Rule 56.1 Statement, ¶ 6.)

15, 19.)  Defendant also admits that it declined PSEC's August 1 and August 8, 2022 written requests.  (*Id.*, ¶ 21.)

Based on the foregoing facts and admissions, no extrinsic evidence is necessary (or permitted) for the Court to grant summary judgment to Plaintiff.  *See Brad H.*, 17 N.Y.3d at 186.

A.    There is No Ambiguity in the Agreement

Defendant's sole argument for "ambiguity" is that "deposit" must relate solely to expenses that have not yet been incurred, but as of August 1, 2022, the additional $150,000 PSEC requested *was* for expenses that had not yet been incurred.  (Rule 56.1 Statement, ¶ 16.)  Even assuming any or some of those expenses had already been incurred, the Agreement defines "Expenses" to encompass expenses "incurred, being incurred and to be incurred."  (*Id.*, ¶ 5.)  The Agreement's plain language therefore provides that Expenses are capable of being incurred in the past, present, or future.  Because "deposits" are applied against such broadly defined Expenses with no temporal limitation, "deposits" can encompass "reimbursement" for purposes of the Agreement.  *See Brad H.*, 17 N.Y.3d at 185 ("the contract must be considered as a whole").  Defendant argues that the placement of "Expenses" somehow excludes the words "incurred, being incurred and to be incurred" that follow.  Defendant's argument is nonsensical for at least five reasons.

First, the words, "in connection with evaluating the Transaction and preparing documentation related to the Transaction", also follow the word "Expenses".  (Rule 56.1 Statement, ¶¶ 3, 5.)  Defendant presumably agrees that that phrase is part of the definition of "Expenses"; otherwise, Defendant would be obligated to wire deposits to PSEC for any expenses whether or not they bore any relation to the Transaction.  Thus, the entire phrase, "incurred, being incurred and to be incurred in connection with evaluating the Transaction and preparing documentation related to the Transaction," is part of the definition of "Expenses"—even though it follows rather than precedes the defined capitalized term.

Second, if Defendant's nonsensical reading were correct (and it is not), then "Expenses" would also exclude the words "being incurred" and "to be incurred", which such expenses Defendant admits are subject to Defendant's obligation to provide deposits to Plaintiff. (Rule 56.1 Statement, ¶ 8.) There is no coherent basis to eliminate the word "incurred" from the definition of "Expenses" while retaining the phrases "being incurred," "to be incurred," and "in connection with evaluating the Transaction and preparing documentation related to the Transaction." *See, e.g.*, *In re Enron Creditors Recovery Corp.*, 380 B.R. 307, 322 (S.D.N.Y. 2008) ("Under ordinary contract construction rules, the rules of English grammar apply.").

Third, if the Agreement required that deposits be paid prior to being incurred, the Agreement would clearly say so. The Agreement does not. (Rule 56.1 Statement, ¶ 3.) There is no ability for CRUSAFin to refuse the deposits against expenses (as proven by the "agrees to promptly wire" mandate), and imposing a temporal restriction around deposits where no temporal restriction exists in the text of the Agreement leads to absurdities.[3] For example, CRUSAFin would be obligated to pay $1,000,000 of deposits for PSEC's expenses that have not yet been incurred, but PSEC would not be reimbursed for $10,000 of expenses that already have been incurred. Nowhere in CRUSAFin's denial of the August 2022 written requests did CRUSAFin ask if the expenses had already been incurred or attempt to use that as justification for the reason it denied the Additional Deposits. (Rule 56.1 Statement, ¶ 23.)

---

[3] *E.g.*, *Mastrovincenzo v. City of New York*, 435 F.3d 78, 104 (2d Cir. 2006) (Words in a contract "should be given the meanings ordinarily ascribed to them and absurd results should be avoided."); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 173 (S.D.N.Y. 2015) ("It is black-letter law that courts must reject interpretations of agreement provisions that are commercially unreasonable or illogical."); *Medidata Sols., Inc. v. Fed. Ins. Co.*, 268 F. Supp. 3d 471, 480 (S.D.N.Y. 2017) ("Form should not prevail over substance and a sensible meaning of words should be sought.").

Fourth, the dictionary definition of "deposit" is "the state of being . . . place[d] especially for safekeeping or as a pledge." (*Id.*, ¶ 18.) There is no requirement therein that the amount of such "deposit" be tied to any particular time period. "Straining a contract's language beyond its reasonable and ordinary meaning does not create an ambiguity." *Regency Equities Corp. v. Reiss*, No. 93 CIV. 8096 (CSH), 1995 WL 362496, at *4 (S.D.N.Y. June 16, 1995).

Fifth, the word "Deposits" is defined as the Initial Work Fee plus each Additional Deposit, which Defendant admits. (Rule 56.1 Statement, ¶ 7.) In turn, "Initial Work Fee" is defined as "a fully-earned, non-refundable work *fee* in the amount of $150,000" (emphasis added). (*Id.*, ¶ 6.) Because the word "fee" in "work fee" has no forward-looking limitation (indeed, such fee is defined as "fully-earned"), and because "Deposits" can be applied to such fully-earned (*i.e.*, already-incurred) fee, the word "deposits" in the Agreement bears no forward-looking limitation.

For the foregoing reasons, there is no ambiguity that Defendant is obligated to wire deposits for application to Plaintiff's expenses that have already been incurred, *as well as* those that are being incurred and have yet to be incurred. Whatever other interpretation Defendant claims to have, such interpretation is not reasonable and thus not cognizable on a motion for summary judgment. *Brad H.*, 17 N.Y.3d at 185 ("A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties.").

B.  <u>Defendant Cannot Twist the Evidence to Deny Existence of PSEC's Multiple Written Requests</u>

Defendant now seemingly wants to characterize the August 1 and August 8, 2022 emails as somehow not "written requests." Of course, emails are writings,[4] and the Agreement specifies that the written request "may be delivered by email." (Rule 56.1 Statement, ¶ 4.) Defendant

---

[4] *E.g., Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 384 (S.D.N.Y. 2005).

quibbles that the substance of the emails somehow does not reflect requests. But that argument defies the dictionary definition of "request", which means "the act or an instance of asking for something." (*Id.*, ¶ 17.) PSEC's August 1, 2022 email reads: "Please also let me know on the incremental $150k work fee deposit that we discussed." (*Id.*, ¶ 15.) PSEC's August 8, 2022 email reads: "Any word on the work letter deposit?" (*Id.*, ¶ 19.) Defendant cannot avoid summary judgment by claiming that these writings do not constitute "the act or an instance of asking for [$150k]." *See Banos v. Rhea*, 25 N.Y.3d 266, 278, 33 N.E.3d 471, 476 (2015) ("[C]ourts may not distort the meaning of words, under the guise of interpretation, so as to create a new contract."); *Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 211 (2d Cir. 2021) ("[T]he plain and ordinary meaning of words may not be disregarded to find an ambiguity where none exists."). Indeed, Defendant's response was that counsel for Defendant's corporate parent (White & Case or W&C) spoke to PSEC's outside counsel (Olshan) and "told them no". (Rule 56.1 Statement, ¶ 22.) Specifically, "W&C mentioned that they had told Olshan the liquidator would not allow additional work fees to be paid." (*Id.*)[5] Defendant's own response to Plaintiff's Request for Admission No. 10 admits that Defendant "declined PSEC's written request." (*Id.*, ¶ 21.) So in addition to the clear fit derived from the dictionary definition, Defendant's own contemporaneous responses treated PSEC's August 1 and 8, 2022 emails as requests capable of declination.

Even assuming *arguendo* that PSEC's August 1 and 8, 2022 written requests were not deemed written requests as a matter of law (and they should be), PSEC's February 9, 2023 email surely constituted a written request. PSEC's February 9, 2023 email "requesting reimbursement

---

[5] Defendant's *post hoc* spin that the August 1 and 8, 2022 emails were somehow merely asking for "updates" rather than outright requesting more deposits is nonsense. Defendant's August 8, 2022 response from W&C clearly was saying "no" to the request for $150k, not "no" to providing an update (since Defendant's response *was* the update).

for $157,795.30" (which "reimbursement", per the discussion above, is encompassed by "deposit" in the Agreement here) was an additional written request for Additional Deposit against Expenses already incurred (by February 2023)—perfectly sound under the Agreement.    (Rule 56.1 Statement, ¶ 24.)  When Defendant refused to pay any amount requested on February 9, 2023 (*id.*, ¶ 25), Defendant again breached the Agreement.  Even now, PSEC is clearly making written requests for the deposits by means of this lawsuit and this request for summary judgment.

*    *    *

Because Defendant declined PSEC's August 1 and 8, 2022 and February 9, 2023 written requests for Additional Deposit (*id.*, ¶¶ 21, 25), Defendant breached the Agreement.  *See, e.g.*, *Am. Dev. Grp., LLC v. Island Robots of Fla.*, 17-CV-3223, 2019 WL 5790265, at *7 (E.D.N.Y. Oct. 4, 2019) ("Failure to perform constitutes a breach of contract."); *Logalbo v. Plishkin, Rubano & Baum*, 163 A.D.2d 511, 513 (2d Dep't 1990) ("refusal to perform constituted a breach"); *Gillette v. Meyers*, 42 A.D.3d 654, 655 (3d Dep't 2007) (same).

## IV.    Defendant's Breach Caused Plaintiff Damages in the Amount of $157,795.30, Plus Interest

### A.    Plaintiff Incurred Over $150,000 in Unpaid Expenses

Defendant admits that Defendant did not pay the amounts Plaintiff incurred.  (Rule 56.1 Statement, ¶ 25.)  Because "Additional Deposits" and "Deposits" can be applied against broadly defined Expenses "incurred, being incurred and to be incurred" (*id.*, ¶¶ 4-5), Plaintiff's enumeration of invoiced amounts is not even necessary to prove damages.  Plaintiff could have brought suit on August 2, 2022 and be entitled to damages.  *See, e.g.*, *Ediciones Quiroga, S.L. v. Fall River Music, Inc.*, 93 CIV. 3914 (RPP), 1995 WL 366287, at *2 (S.D.N.Y. June 20, 1995) ("The doctrine of repudiation allows a party to sue for breach immediately . . . .").

Plaintiff was clearly not required to enumerate all Expenses before seeking Deposits from Defendant. As Defendant admits, "Expenses" includes expenses yet to be incurred; by logical necessity, Plaintiff could not possibly enumerate expenses for work to be performed sometime in the future. *See Wrights Mill Holdings*, 127 F. Supp. 3d at 173 ("It is black-letter law that courts must reject interpretations of agreement provisions that are commercially unreasonable or illogical."). But even assuming *arguendo* that Plaintiff is required to enumerate all invoiced amounts, Plaintiff has amply done so. (Rule 56.1 Statement, ¶ 26.) And PSEC has, in fact, incurred each enumerated Expense. (*Id.*, ¶ 27.) "Under New York law, to 'incur' means 'to become liable or subject to'; to incur a charge, one 'must at some point be legally liable to pay that charge.'" *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 61 (2d Cir. 2021). PSEC was liable to each internal and external vendor for the invoiced amounts.

Defendant agreed to pay deposits in respect of all of Plaintiff's Expenses, explicitly including "*internal* and external legal" legal fees. (Rule 56.1 Statement, ¶ 5 (emphasis added).) There is no basis to distinguish between fees charged by third parties and fees charged by Plaintiff's in-house (*i.e.*, internal) lawyers. PSEC was "at some point legal liable" to pay all such fees. The invoice collecting the time entries of PSEC in-house lawyers was incurred because PCC loses $48,048.00 in overhead offset if CRUSAFin continues to fail to pay. (*Id.*, ¶ 28.) As a matter of law, the incurred amount by such "internal" counsel can be charged by the hour. Indeed, in the Second Circuit "[i]t is well-settled that attorneys' fees and costs should be awarded for litigation performed by in-house counsel if such fees would be awarded for the same work performed by outside counsel." *Video-Cinema Films*, 2004 WL 213032, at *6; *see also Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d 437, 458 (S.D.N.Y. 2011) (awarding fees to in-house counsel); *Broad. Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 661 (S.D.N.Y. 1996) ("Attorney's fees

may be awarded for the work of in-house counsel, and an hourly rate based on an estimate of the fee charged by independent counsel for similar services can provide a reasonable basis for calculating such an award if other relevant criteria are satisfied."); *Browning v. Peyton*, 123 F.R.D. 75 (S.D.N.Y. 1988) (award of attorney fees for successful motion during discovery can include services rendered by party's in-house counsel).

With respect to transactional attorneys, New York courts and ethics authorities have repeatedly advised that it is perfectly appropriate for in-house counsel to charge fees so long as the amount charged is used to reimburse overhead, rather than to earn a profit for the corporate employer. *See* NYC Eth. Op. 1994-6 (May 5, 1994); NYCLA Eth. Op. 670(89-3) (May 19, 1989). As the New York County Lawyers' Association Committee on Professional Ethics put it, the rule against fee-sharing applies only where a corporation earns a profit from the lawyer's services:

> Regardless of the Code provision [allegedly] violated – be it fee splitting, aiding the unauthorized practice of law, or misrepresentation – the evil arises only when a lay agency earns a profit from the rendition of legal services by its salaried employee. As was first stated by the American Bar Association in 1926, a lawyer "may not properly accept employment from a lay intermediary with the knowledge that such lay intermediary is profiting, or expecting to profit, from his professional services." ABA 10 (1926). However, the same rationale does not apply where the charge is no greater than the institution's cost for the services and overhead of the staff attorney.

Legal Fees; Charging for Legal Expenses of in-House Laws., NYCLA Eth. Op. 670(89-3) (May 19, 1989). Here, as clearly stated in PCC's public filings, Prospect Administration LLC does not earn profits. (Rule 56.1 Statement, ¶ 28.) Moreover, the rates charged by PSEC's in-house transactional attorneys relating to the transaction at issue are far lower than prevailing rates charged by outside counsel (*id.*, ¶ 29), ultimately benefiting CRUSAFin.[6] Defendant unambiguously

---

[6] "[I]f in-house counsel had not participated in the legal work, the workload and consequently the fee of outside counsel would have proportionately increased. There [is] no reason . . . that defendant should benefit financially from plaintiff's decision to use its own legal department" in

agreed to pay PSEC's "internal and external" legal fees in the work letter, which was negotiated by Defendant's counsel, DLA Piper. (Rule 56.1 Statement, ¶¶ 5, 11.) Defendant is a sophisticated financial institution represented by sophisticated counsel and must keep its side of the bargain. *159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353, 356 (2019) ("In New York, agreements negotiated at arm's length by sophisticated, counseled parties are generally enforced according to their plain language pursuant to our strong public policy favoring freedom of contract.").

In all events, as discussed above, the details of these invoices do not change the fact that CRUSAFin's failure to wire PSEC $150,000 in Additional Deposit in August 2022 already caused PSEC to be damaged in the amount of $150,000.

B.  Defendant Owes Plaintiff Statutory Interest

Prejudgment interest should be awarded as a matter of law. N.Y. CPLR § 5001. "Under CPLR § 5001(b), a prevailing party is entitled to prejudgment interest 'computed from the earliest ascertainable date the cause of action existed.'" *Stanford Square, L.L.C. v. Nomura Asset Cap. Corp.*, 232 F. Supp. 2d 289, 292 (S.D.N.Y. 2002) (quoting N.Y. CPLR § 5001(b).)[7] "[I]t is the date of the breach that is relevant for computing prejudgment interest." *Id.* Here, Defendant's breach occurred when it did not "promptly wire additional deposits to PSEC" after PSEC's August 1, 2022 written request for such deposits. That request was for $150,000, so prejudgment interest should accrue on that sum starting from August 1, 2022 through the date of summary judgment at the rate of 9% per annum. Separately, prejudgment interest on the remaining sum of $7,795.30 should accrue from February 9, 2023 (the date of the request adding on the remainder) through the date of summary judgment at the rate of 9% per annum.

---

the underlying transaction. *Travelers Ins. Co. v. Commissioners of State Ins. Fund*, 227 A.D.2d 208, 209 (1st Dep't 1996) (awarding fees to in-house counsel) (punctuation and citations omitted).
[7] "The statutorily mandated prejudgment interest i[s] . . . 9% per annum." *Id.* at 294; N.Y. CPLR § 5004(a)

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment should be granted and Plaintiff should be awarded damages in the amount of $157,795.30 plus pre-judgment interest calculated at the rate of 9% per annum from August 1, 2022 (on $150,000) and from February 9, 2023 (on $7,795.30) through the date of the judgment.

Dated: New York, New York
       September 7, 2023

                                   Respectfully submitted,

                                   By:  */s/ Jonathan J. Li*
                                       Jonathan J. Li
                                       Adam Burton
                                       10 E 40th Street, 45th Floor
                                       New York, New York 10016
                                     (646) 845-6060
                                     jli@prospectstreet.com
                                     aburton@prospectstreet.com

                                   *Attorneys for Plaintiff Prospect Capital*
                                   *Corporation*