UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PROSPECT CAPITAL CORPORATION,

        Plaintiff,

   -v-

CREDITO REAL USA FINANCE LLC,

        Defendant.

23-cv-3005 (JSR)

OPINION AND ORDER

---

JED S. RAKOFF, U.S.D.J.

    On September 7, 2023, plaintiff, Prospect Capital Corporation, and defendant, Credito Real USA Finance LLC, cross-moved for summary judgment on the only claim in this action. See Pl. Mem. of Law in Supp. of Mot. for Summ. J ("Pl. Mem."), ECF No. 30; Def. Mem. of Law in Supp. of Mot. for Summ. J. ("Def. Mem."), ECF No. 31. After full consideration of the parties' written submissions and oral argument, the Court granted plaintiff's motion for summary judgment and denied defendant's motion for summary judgment by "bottom-line" order dated October 25, 2023. This Opinion sets forth the reasons for that ruling.

I.    **Factual and Procedural Background**[1]

On June 6, 2022, plaintiff and defendant entered a contract in contemplation of plaintiff evaluating the purchase of an equity interest in defendant. Burton Decl., Ex. 1, ECF No. 27-1. Pursuant to this agreement, defendant agreed to "wire to [plaintiff] a fully-earned, non-refundable work fee in the amount of $150,000 . . . in connection with [plaintiff's] accounting, consulting, travel, due diligence, internal and external legal and tax, and other expenses (collectively, 'Expenses') incurred, being incurred and to be incurred in connection with evaluating the" potential transaction. Id. In accordance with the agreement, defendant wired $150,000 to plaintiff. Pl. Rule 56.1 Statement of Material Facts ("Pl. 56.1 Statement"), ¶ 2, ECF No. 29.

Then, on July 12, 2022, plaintiff and defendant entered an amended and restated agreement. Pl. 56.1 Statement, ¶ 3; Burton, Decl., Ex. 3, ECF No. 27-3. This amended agreement provided that defendant will "wire to [plaintiff] a fully-earned, non-refundable work fee in the amount of $150,000," defined as the "Initial Work Fee," "in connection with [plaintiff's] accounting, consulting, travel, due diligence, internal and external legal and tax, and other expenses," defined as "Expenses," "incurred, being incurred and to be incurred in connection with evaluating the Transaction

---

[1] Unless otherwise noted, the following facts are undisputed.

and preparing documentation related to the Transaction." Burton Decl., Ex. 3. The day after entering into this agreement, defendant wired another $150,000 to plaintiff. Pl. 56.1 Statement, ¶ 13.

In addition, the amended agreement provided that: "At [plaintiff's] written request (which may be delivered by email), the Company agrees to promptly wire additional deposits to [plaintiff] (each, an 'Additional Deposit', and together with the Initial Work Fee, the 'Deposits') against Expenses in excess of the Initial Work Fee." Burton Decl., Ex. 3. However, when plaintiff made written requests for an additional $150,000 deposit pursuant to this provision on August 1, 2022 and August 8, 2022, defendant refused to pay. See Pl. 56.1 Statement, ¶¶ 15, 19, 21-22; Burton Decl., Ex. 5, at 6, ECF No. 27-5; Burton Decl., Ex. 11, ECF No. 27-11 (an August 1, 2022 email from plaintiff to defendant stated, "Please let me know on the incremental $150k work fee deposit that we discussed," and an August 8, 2022 email from plaintiff to defendant asked, "Any word on the work letter deposit?").

Specifically, on August 8, 2022, defendant informed plaintiff that the request had been refused, "the liquidator would not allow additional work fees to be paid," and that the $300,000 that plaintiff had already received should "mitigate" the "dry hole risk" that plaintiff faced. Pl. 56.1 Statement, ¶ 22; Burton Decl., Ex. 11. Plaintiff did not respond. Def. Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1 Statement"), ¶¶ 10, 12, ECF

No. 33; Mullaney Decl., Ex. G, at 161:16-162:6, ECF No. 32-7; Mullaney Decl., Ex. H, at 94:9-12, ECF No. 32-8. Thereafter, until November 2022, plaintiff continued to evaluate the transaction and incurred $157,795.30 in expenses beyond the $300,000 that defendant had already wired to plaintiff. Pl. 56.1 Statement, ¶¶ 14, 26. Ultimately, the potential transaction between the parties was never consummated. Def. 56.1 Statement, ¶ 20; Pl. Rule 56.1 Counterstatement of Material Facts ("Pl. 56.1 Counterstatement"), ¶ 20, ECF No. 37.

On February 9, 2023, plaintiff sent an email to defendant "requesting reimbursement for $157,795.30 in deal expenses not covered by the previously received deposits under the attached work letters." Burton Decl., Ex. 12, ECF No. 27-12. Defendant again refused to pay. Pl. 56.1 Statement, ¶ 25; Def. Counterstatement of Disputed Material Facts ("Def. 56.1 Counterstatement"), ¶ 25, ECF No. 38. On March 1, 2023, plaintiff restated, in writing, its request for "$157,795.30 representing amounts due from [defendant] to [plaintiff] under the letter agreement dated July 12, 2022." Li Decl., Ex. 22, ECF No. 35-1; Pl. 56.1 Counterstatement, ¶ 6(d). Defendant never paid. 10/12/23 Hr'g Tr. at 2:14-18.

On April 10, 2023, plaintiff sued defendant for breach of contract and sought $157,795.30 in damages (plus prejudgment interest). Compl., ¶¶ 18-23, ECF No. 1. On September 7, 2023,

plaintiff and defendant cross-moved for summary judgment. <u>See</u> Pl. Mem.; Def. Mem.

## II.  Legal Standard

The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).[2] "The moving party bears the burden to demonstrate the absence of any genuine issues of material fact." <u>New York v. Mountain Tobacco Co.</u>, 942 F.3d 536, 541 (2d Cir. 2019). If the moving party will not bear the burden of proof at trial, its "burden will be satisfied" by showing "an absence of any evidence to support an essential element of the nonmoving party's claim." <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995). Once "the moving party" has met its "initial burden of establishing there are no genuine issues of material fact, . . . the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)). "A material fact is one that would affect the outcome of the suit under the governing law, and a dispute about a genuine issue of material fact occurs if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party." <u>Aetna Life Ins. Co. v. Big Y</u>

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

<u>Foods, Inc.</u>, 52 F.4th 66, 72 (2d Cir. 2022). In making its determination on summary judgment, the Court "view[s] the evidence in the light most favorable to the party opposing summary judgment, draw[s] all reasonable inferences in favor of that party, and eschew[s] credibility assessments." <u>Mountain Tobacco Co.</u>, 942 F.3d at 541.

### III. Discussion

New York law governs the amended agreement. Pl. 56.1 Statement, ¶ 9. Under New York law, a breach of contract claim has four elements: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." <u>Tycoons Worldwide Grp. (Thai.) Pub. Co. v. JBL Supply Inc.</u>, 721 F. Supp. 2d 194, 201 (S.D.N.Y. 2010). Only elements three (breach) and four (damages) are in dispute. <u>See</u> Pl. 56.1 Statement, ¶¶ 12, 30; Def. 56.1 Counterstatement, ¶¶ 12, 30.

#### A. Breach

Plaintiff argues that the undisputed facts establish that defendant's refusal to pay an additional deposit breached the following contractual provision: "At [plaintiff's] written request (which may be delivered by email), [defendant] agrees to promptly wire additional deposits to [plaintiff] (each an '<u>Additional Deposit</u>', and together with the Initial Work Fee, the '<u>Deposits</u>') against Expenses in excess of the Initial Work Fee." Burton Decl., Ex. 3. Defendant, on the other hand, argues it is entitled to

summary judgment because the undisputed facts establish this contractual provision was not breached. As discussed below, the Court agrees with plaintiff and finds that the undisputed facts establish this contractual provision was breached.

> **i.  The contract is unambiguous, and under the unambiguous meaning of the contract, it is undisputed that defendant breached the contract unless it can raise a meritorious defense.**

Before turning to the parties' specific arguments, the Court must assess whether the contract is unambiguous and determine the meaning of the contractual provision at the center of the parties' dispute.

Under New York law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield v. Philles Recs., Inc., 98 N.Y.2d 562, 569 (2002). "A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by the danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for difference of opinion." Id. On the other hand, a contract is ambiguous if "read as a whole, [it] fails to disclose its purpose and the parties' intent, or when specific language is susceptible of two reasonable interpretations." Donohue v. Cuomo, 38 N.Y.3d 1, 13 (2022). However, "'[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different

interpretations in the litigation.'" Kennedy v. Basil, 531 F. Supp. 3d 828, 841 (S.D.N.Y. 2021) (quoting Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989)). The Court must assess ambiguity "within the four corners of the document," Brad H. v. City of New York, 17 N.Y.3d 180, 186 (2011), and "[w]hether or not a writing is ambiguous is a question of law to be resolved by the courts," W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990).

The Court finds as a matter of law that the contract is unambiguous. The contract clearly states that once plaintiff makes a written request for an additional deposit, defendant must wire the additional deposit to plaintiff to be used for plaintiff's expenses, which are contractually defined as plaintiff's "accounting, consulting, travel, due diligence, internal and external legal and tax, and other expenses," that are in excess of the Initial Work Fee, which is contractually defined as "a fully-earned, non-refundable work fee in the amount of $150,000." See Burton Decl., Ex. 3.

Defendant offers an alternative interpretation of "request" and "deposits . . . against Expenses" to undermine this common-sense construction. However, defendant's interpretation is unreasonable and contrary to the plain terms of the contract.

First, defendant argues that the use of the word "request" in this provision means defendant was entitled to decline plaintiff's

written request. That is meritless. The contract provides that defendant "agrees" to wire additional deposits upon plaintiff's written request. Burton Decl., Ex. 3. Accordingly, defendant cannot decline plaintiff's written request without breaching the contract. See Davies, Hardy, Ives & Lawther v. Abbott, 38 N.Y.2d 216, 219 (1975) (interpreting the terms "'agrees to assume' . . . as manifesting a commitment to some obligation"). A further problem is that defendant's interpretation would render part of the contractual provision mere surplusage. Defendant's interpretation reads the phrase "agrees to promptly wire additional deposits" out of the contract because under defendant's construction, plaintiff could make a written request without any corresponding obligation on defendant to pay. The Court will not adopt an interpretation that renders a provision surplusage. See FCI Grp., Inc. v. City of New York, 862 N.Y.S.2d 352, 356 (1st Dep't 2008) ("render[ing] [a] . . . provision mere surplusage [is] in contravention of the settled rule that a contract is to be construed so as to give effect to each and every part.").

Second, defendant argues that the phrase "deposits . . . against Expenses" means plaintiff's request for an additional deposit must be made before the expenses are incurred. That is wrong. For starters, the provision does not expressly place a temporal limitation on when expenses must be incurred, and when read in the context of the contract as a whole, it would be improper

to impose such a temporal limitation. The immediately preceding
sentence states that defendant:

> will promptly . . . wire to [plaintiff] a fully-earned, non-
> refundable work fee in the amount of $150,000 (the 'Initial
> Work Fee') in connection with [plaintiff's] accounting,
> consulting, travel, due diligence, internal and external
> legal and tax, and other expenses (collectively, 'Expenses')
> incurred, being incurred and to be incurred in connection
> with evaluating the Transaction and preparing documentation
> related to the Transaction.

Burton Decl., Ex. 3. This sentence clarifies that the parties
contemplated that expenses may include costs that were previously
incurred and that may be incurred in the future. Further to the
point, the "Initial Work Fee" is defined as a "deposit" in the
contractual provision at issue, see id., so it would be absurd to
read the contract as providing that one deposit (the Initial Work
Fee) could relate to expenses that were already incurred but
additional deposits could not. The final nail in the coffin is
that defendant is attempting to cherry-pick only some of the words
that follow the term "Expenses" from the preceding sentence to
limit the meaning of "Expenses," in the provision at issue, to
only those costs that are "being incurred" or that "will be
incurred" "in connection with evaluating the Transaction and
preparing documentation related to the Transaction." However,
defendant, in essence, is asking the Court to transplant the entire
phrase following "Expenses" in the prior sentence except for one

word: "incurred." That makes absolutely no sense. The Court accordingly rejects defendant's interpretation.

Under the unambiguous meaning of the disputed contractual provision, defendant breached the contract. It is undisputed that defendant wired the Initial Work Fee to plaintiff on July 13, 2022. Pl. 56.1 Statement, ¶ 13. It is also undisputed that defendant denied plaintiff's written requests for $150,000 on August 1, 2022 and August 8, 2022, see Burton Decl., Ex. 5, at 6, and plaintiff's written request for reimbursement of $157,795.30 on February 9, 2023 and March 1, 2023, see Burton Decl., Ex. 12; Li Decl., Ex. 22; Pl. 56.1 Statement, ¶ 25; Def. 56.1 Counterstatement, ¶ 25; Pl. 56.1 Counterstatement, ¶ 6(d); 10/12/23 Hr'g Tr. at 2:14-18.[3] Therefore, it is undisputed that defendant breached this contractual provision unless defendant has raised a meritorious defense.

**ii.   Defendant has not raised a meritorious defense.**

Defendant attempts to raise four defenses as a basis for granting it summary judgment: (1) plaintiff failed to meet a condition precedent for invoking the contractual provision requiring the payment of an additional deposit; (2) plaintiff waived its entitlement to an additional deposit; (3) the parties

---

[3] As discussed below, the Court finds that defendant has failed to raise a genuine dispute of material fact that plaintiff sent written requests for an additional deposit on August 1, 2022, August 8, 2022, February 9, 2023, and March 1, 2023.

orally modified the contract to no longer require defendant to pay an additional deposit; and (4) an implied-in-fact contract exists that defendant was not required to pay the additional deposit. The Court addresses each in turn, finding that the undisputed facts establish the opposite of defendant's position.

> a. **It undisputed that plaintiff met the condition precedent for invoking this contractual provision.**

A breach of contract claim must fail when "the party seeking to enforce the contract has failed to perform a specified condition precedent." Ampower-US, LLC v. WEG Transformers USA, LLC, 214 A.D.3d 1129, 1131 (3d Dep't 2023). "A condition precedent . . . is an act or event . . . which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." Sohm v. Scholastic Inc., 959 F.3d 39, 46 (2d Cir. 2020). "Conditions precedent are not favored" under New York law. Chrisanntha, Inc. v. DeBaptiste, 196 A.D.3d 1033, 1046 (4th Dep't 2021). Therefore, "[c]onditions precedent are not readily assumed" and must "be expressed in unmistakable language." Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc., 821 F.3d 297, 305 (2d Cir. 2016).

Defendant is correct that the requirement that plaintiff make a written request for an additional deposit is a condition precedent for triggering defendant's obligation to wire a deposit. However, defendant's argument that this condition precedent was

not met misses the mark. In response to plaintiff's request for admission, defendant admitted that it "declined [plaintiff's] written request of August 1, 2022, reiterated August 8, 2022, to wire an additional deposit in the amount of $150,000 to [plaintiff]." Burton Decl., Ex. 5, at 6. That admission is binding and can be used as evidence on summary judgment. See Fed. R. Civ. P. 36(b); SEC v. Dynasty Fund, Ltd., 121 F. App'x 410, 412 (2d Cir. 2005); T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. 38, 44 (S.D.N.Y. 1997); Flair Int'l Corp. v. Heisler, 173 F.3d 844 (2d Cir. 1999).

Furthermore, it is undisputed that defendant also refused plaintiff's two requests for $157,795.30 on February 9, 2023 and March 1, 2023. Defendant has not disputed that plaintiff's request on March 1, 2023, is a written request[4] or that it failed to pay the amount. See 10/12/23 Hr'g Tr. at 2:14-18. Defendant's attempt to raise a genuine dispute of material fact about whether the February 9, 2023 email from plaintiff, which "request[ed] reimbursement for $157,795.30 in deal expenses," Burton Decl., Ex. 12, is a written request also fails. Defendant attempts to recharacterize the email as a "written request for reimbursement,

---

[4] Defendant only makes a conclusory assertion in its 56.1 Statement that "[Plaintiff] did not make a written request for an Additional Deposit against Expenses," without citing any record evidence. See Def. 56.1 Statement, ¶ 6. That is insufficient to defeat summary judgment (let alone a basis upon which to grant summary judgment to defendant).

not for an additional deposit against expenses," Def. 56.1
Counterstatement, ¶ 24, but that is a distinction without a
difference. As the Court already explained above, plaintiff was
entitled to request a deposit for expenses that were already
incurred or that would be incurred in the future; thus, a request
for a reimbursement of expenses already incurred is still a request
for an additional deposit within the meaning of the contract.
Therefore, the undisputed facts establish this condition precedent
was met as it relates to plaintiff's request for $150,000 in 2022
and $157,795.30 in 2023.

Second, defendant argues that plaintiff has failed to meet a
condition precedent because it has not shown "it had incurred
expenses in excess of the Initial Work Fee . . . that would permit
a request for an Additional Deposit." Def. Mem. of Law in Opp'n to
Pl. Mot. for Summ. J., at 6, ECF No. 34. However, that is not a
condition precedent. The provision that "[defendant] agrees to
promptly wire additional deposits to [plaintiff] . . . against
Expenses in excess of the Initial Work Fee" does not clearly impose
(as a condition precedent must under New York law) a requirement

that plaintiff first spend the Initial Work Fee before requesting an additional deposit.[5] Therefore, this argument is without merit.

In sum, the Court concludes that the undisputed facts establish that plaintiff met the condition precedent to requesting an additional deposit.

          **b. It undisputed that the contractual provision at issue was neither waived nor modified.**

Defendant next argues it is entitled to summary judgment because plaintiff waived and modified the July 12 agreement to no longer require defendant to pay the additional deposit that plaintiff requested. That argument is without merit. In fact, the undisputed facts establish that the provision requiring defendant

---

[5] In support of its own motion for summary judgment, defendant made a similar argument that there is no breach because "[plaintiff's] request was not in anticipation of any due diligence expenses, as due diligence was virtually complete, and the parties were very close to a deal." Def. Mem., at 9. However, defendant neither cited nor provided any evidence to substantiate due diligence was almost complete or that the request was not in anticipation of due diligence expenses. The only evidence defendant put forward shows that the parties thought they were close to a deal. See Def. 56.1 Statement, ¶ 13. Conclusory arguments, without evidentiary support, cannot defeat plaintiff's motion for summary judgment, let alone provide a basis to grant summary judgment to defendant. Nor can defendant's argument that plaintiff was, in essence, requesting an inappropriate "break-up fee" save this argument, see Def. Mem., at 9, as defendant's only cited evidence in its Rule 56.1 Statement does not show or support that plaintiff was seeking a break-up fee, see Def. 56.1 Statement, ¶ 13.

to pay the additional deposit to plaintiff was not waived or modified.

The contract contains the following non-waiver and no-oral modification provision:

> [Defendant] has no other agreement or understanding and will assert no lack of consideration or any prior, contemporaneous, or later agreement in any way different from or supplemental to this agreement, unless such change from this agreement is signed in blue ink at the bottom of a formal written instrument by John F. Barry III as CEO of [plaintiff], or his successor, or by Jonathan J. Li as an Authorized Signatory (an email or emails being insufficient to change this agreement). [Defendant] recognizes that no one at [plaintiff] or elsewhere has any authority (apparent, implied, actual or otherwise) to alter, amend, modify or in any way change this agreement or any understanding or agreement set forth herein except John F. Barry III as CEO of [plaintiff], or his successor, or by Jonathan J. Li as an Authorized Signatory, and only as provided in the immediately preceding sentence.

Burton Decl., Ex. 3. In general, "[n]on-waiver" and "[n]o oral modification clause[s]" are enforceable. Rosenzweig v. Givens, 62 A.D.3d 1, 7 (1st Dep't 2009); Awards.com, LLC v. Kinko's, Inc., 42 A.D.3d 178, 188 (1st Dep't 2007); Israel v. Chabra, 12 N.Y.3d 158, 163 (2009). See also Towers Charter & Marine Corp. v. Cadillac Ins. Co., 894 F.2d 516, 522 (2d Cir. 1990) ("a written agreement that expressly states it can be modified only in writing cannot be modified orally"). However, "[e]ven where a contract specifically contains a nonwaiver clause or a provision that it cannot be modified without a writing, a waiver may be established by the parties' course of conduct or actual performance." McGuire v.

McGuire, 197 A.D.3d 897, 901 (4th Dep't 2021). See also HOV Servs., Inc. v. ASG Techs. Grp., Inc., 212 A.D.3d 503, 505 (1st Dep't 2023).

Defendant relies on the same evidence to argue plaintiff waived the provision requiring defendant to pay an additional deposit and modified the contract based on partial performance or equitable estoppel to no longer require defendant to pay an additional deposit. On August 8, 2022, defendant emailed plaintiff that it would not pay additional money beyond the $300,000 that it had already paid, plaintiff said nothing in response to defendant's email stating it would not pay any additional money, and plaintiff continued to evaluate the transaction and did not "pursue the matter further as a business judgment" at the time. Def. 56.1 Statement, ¶¶ 9-12.

Starting first with waiver, the undisputed facts establish that plaintiff did not waive the provision requiring defendant to pay it $150,000 upon its written request.[6] Waiver is not "lightly presumed and must be based on a clear manifestation of intent to

---

[6] For the first time on reply, defendant appears to argue that plaintiff did not just waive the contractual term in the agreement requiring defendant to pay additional deposits but also waived its ability to assert breach of contract because it failed to provide timely notice of the breach. See Def. Reply Mem. of Law in Further Supp. of Mot. for Summ. J. ("Def. Reply Mem."), at 6-7, ECF No. 42. However, arguments raised for the first time on reply are waived. United States v. Hill, 462 F. App'x 125, 127 n.2 (2d Cir. 2012); Smith v. Wells Fargo Bank, N.A., 666 F. App'x 84, 88 (2d Cir. 2016). Accordingly, the Court will not consider this argument to

relinquish a contractual protection." <u>Fundamental Portfolio
Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.</u>, 7 N.Y.3d 96, 104
(2006). "Waiver may be accomplished by express agreement or by
such conduct or failure to act as to evince an intent not to claim
the purported advantage." <u>Dice v. Inwood Hills Condo.</u>, 237 A.D.2d
403, 404 (2d Dep't 1997). Plaintiff's silence and continued
evaluation of the transaction, in the face of the express non-
waiver provision in the contract and defendant stating it would
not perform, do not amount to waiver. It is well-established that
waiver "cannot be inferred from mere silence" nor can it be
"created by negligence, oversight, or thoughtlessness." <u>Stassa v.
Stassa</u>, 123 A.D.3d 804, 806 (2d Dep't 2014). Here, plaintiff was
silent in the face of defendant's breach, which as a matter of law
cannot amount to waiver. Nor can plaintiff's conduct after
defendant's refusal to perform change that calculus. "'[F]or
conduct to amount to a waiver, it must not otherwise be compatible
with the agreement as written; rather, the conduct of the parties
must evidence an indisputable mutual departure from the written
agreement.'" <u>Picture Pats., LLC v. Aeropostale, Inc.</u>, 788 F. Supp.
2d 127, 143-44 (S.D.N.Y. 2011) (quoting <u>Dallas Aerospace, Inc. v.
CIS Air Corp.</u>, 352 F.3d 775, 783 (2d Cir. 2003)). Plaintiff's
continuing to perform its obligation under the original contract
does not evince an intent to waive the provision requiring

defendant to pay plaintiff the additional deposit, as plaintiff's conduct is entirely consistent with contract as written.[7]

Defendant tries to advocate for a contrary conclusion by relying on Capital Medical Systems, Inc. v. Fuji Medical Systems, U.S.A., Inc., 239 A.D.2d 743 (1997) to argue that "[s]ubsequent performance following a breach establishes a waiver absent a timely notice of breach." Def. Reply Mem., at 5. However, that case does not stand for that proposition. Instead, that case states "[a] party to an agreement who believes it has been breached may elect to continue to perform the agreement and give notice to the other side rather than terminate." Cap. Med. Sys., 239 A.D.2d at 746. Here, the issue is not waiver of a breach; instead, it is waiver of the contractual protection of the provision requiring defendant to pay additional deposits upon plaintiff's written request. In

---

[7] In its reply brief with respect to its modification argument, defendant argues that plaintiff's conduct was inconsistent with the July 12 agreement because in the past, plaintiff "paused work on all of the occasions where it was awaiting receipt of a requested deposit -- including the time between August 1 and August 8, 2022." Def. Reply Mem., at 4. Defendant does not directly make this argument with respect to its waiver argument, but to the extent it did, this is a non-sequitur. The fact that plaintiff paused while awaiting deposits in the past has no bearing on whether its continued evaluation of the transaction is consistent with the agreement or not.

sum, the Court concludes the undisputed facts establish there is no waiver.

The Court now turns to defendant's modification argument. There are two circumstances under which an oral modification can be enforced in the face of a no-oral modification provision: partial performance and equitable estoppel. Towers Charter & Marine Corp., 894 F.2d at 522. Under the partial performance exception to a no-oral modification clause, "an alleged oral modification will be deemed enforceable only if there is part performance that is unequivocally referable to the oral modification, which requires conduct inconsistent with any other explanation." Del Vecchio v. Del Vecchio, 219 A.D.3d 572, 577 (2d Dep't 2023). As it relates to equitable estoppel, "when one party has induced the other party to rely on an oral modification, the first party may be equitably estopped from invoking the requirement that any modification be in writing." Towers Charter & Marine Corp., 894 F.2d at 522. Like the partial performance exception, "the conduct claimed to have been performed in reliance on the oral modification must be unequivocally referable to the modification." Id.

Defendant's modification argument fails as a matter of law. For starters, defendant has put forward no evidence that it undertook conduct in reliance on any oral modification. Defendant only asserted, without any substantiating evidence, that it

"devoted its own attorneys' and other experts' time to continuing to deal with" plaintiff and that it "would not have done so had it known that [plaintiff] was secretly planning to spring a $150,000 or so bill on it at the end." Def. Mem., at 12. Defendant's say-so cannot defeat summary judgment, let alone support granting summary judgment to defendant. Thus, defendant's equitable estoppel argument fails as a matter of law.

Moreover, defendant's entire theory suffers from a more fundamental flaw: defendant concedes there is no oral modification of the contract. See Def. Reply Mem., at 2-3 ("[T]here is an undisputedly authentic writing that provides the terms of the modification. So [plaintiff's] argument that there was no *oral* modification is simply beside the point."). Instead, defendant argues that its email to plaintiff, stating it would not pay any additional deposits, and then plaintiff's silence and continued evaluation of the transaction constituted acceptance of the modification. Thus, defendant has all but conceded the inapplicability of the case law it relied upon its opening brief, which requires an oral agreement and partial performance. See Grandonico v. Consortium Commc'ns Int'l, Inc., 566 F. Supp. 1288, 1291 (S.D.N.Y. 1983) ("while partial performance may be used to prove an oral agreement where it is alleged that an oral agreement

was made, there mut be an oral *agreement* to alter the written contract...").

The case law that defendant cites in its reply brief to argue this exception applies to a written, unsigned modification is completely off-base. See Def. Reply Mem., at 1-3. Three of the cases that defendant relies upon state basic, uncontested principles of contract law, but the cases have nothing to do with the waiver of no oral modification clauses. See Martin v. Peyton, 246 N.Y. 213, 218 (1927); Chase v. Skoy, 146 A.D.2d 563, 564 (2d Dep't 1989); Seven-Up Bottling Co. (Bangkok), Ltd. v. PepsiCo, Inc., 686 F. Supp. 1015, 1022-23 (S.D.N.Y. 1988). From there, defendant's cases go further afield to discuss the writing requirement under statutory provisions that are completely inapplicable to this case. See Bazak Int'l Corp. v. Tarrant Apparel Grp., 378 F. Supp. 2d 377, 383-84 (S.D.N.Y. 2005) (discussing the writing requirement of U.C.C. Section 2-201(2)); Naldi v. Grunberg, 80 A.D.3d 1, 6-7 (1st Dep't 2010) (discussing the writing requirement of the statute of frauds).

To the extent defendant is now arguing that its unilateral sending of an email plus plaintiff's silence and continued evaluation of the transaction constitutes a binding written modification, that is completely without merit.[8] In the absence of

---

[8] Defendant argues that because the July 12 agreement was not signed in blue ink, the "blue ink" requirement of the non-waiver

a signed writing by plaintiff, defendant's failure to offer any evidence of consideration is fatal. See Est. of Anglin ex rel. Dwyer v. Est. of Kelley ex rel. Kelley, 270 A.D.2d 853, 855 (4th Dep't 2000); GG Managers, Inc. v. Fitdata Tr. Co. of N.Y., 215 A.D.2d 241, 242 (1st Dep't 1995); N.Y. Gen. Obligation Law § 5-1103; Deutsche Bank Sec., Inc. v. Rhodes, 578 F. Supp. 2d 652, 660 (S.D.N.Y. 2008). In sum, the undisputed facts establish there was no modification of the contract.

### c. The undisputed facts establish there is no implied-in-fact contract.

Defendant's final argument is that it is entitled to summary judgment because there is an implied-in-fact contract that provided defendant would not need to pay the additional deposit that plaintiff requested. This argument relies on the same evidence as defendant's waiver and modification arguments. It is similarly without merit.

"A contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct." Beth Israel Med. Ctr. v.

_____

and no-oral modification clause should not be strictly enforced. See Def. Mem., at 11. That argument is completely inapposite. Defendant does not argue this renders the July 12 agreement unenforceable. Nor does it aid defendant's argument that its email modified the agreement, as that writing does not modify the contract due to a lack of consideration, not because it was not signed in blue ink.

<u>Horizon Blue Cross & Blue Shield of N.J., Inc.</u>, 448 F.3d 573, 582 (2d Cir. 2006) (quoting <u>Jemzura v. Jemzura</u>, 36 N.Y.2d 469, 503-04 (1975)). However, "under New York law, 'a contract cannot be implied in fact where there is an express contract covering the subject matter involved.'" <u>Saeed v. Kreutz</u>, 606 F. App'x 595, 597 (2d Cir. 2015) (quoting <u>Julien J. Studley, Inc. v. N.Y. News, Inc.</u>, 512 N.E.2d 300, 301 (1987)). Here, the June 6 and July 12 agreements are express agreements that indisputably cover the transaction that the parties were pursuing even after August 8, 2022, as the July 12 agreement contained a broad definition of "Transaction" that covered "a potential transaction that would involve [plaintiff] purchasing Credito Real USA, Inc.'s equity interest in [defendant]." Burton Decl., Ex. 3. Therefore, there can be no implied-in-fact contract as a matter of law. <u>See Saeed</u>, 606 F. App'x at 597.

### B. Damages

It is undisputed that defendant did not pay plaintiff either the $150,000 amount it requested on August 1, 2022 and August 8, 2022 or the $157,795.30 amount it requested on February 9, 2023 and March 1, 2023. Pl. 56.1 Statement, ¶¶ 21, 25; 10/12/23 Hr'g Tr. at 2:14-18. Plaintiff argues that it is entitled to $157,795.30 in damages without enumerating its expenses. Defendant did not respond to this argument. The Court agrees with plaintiff. Plaintiff was entitled to submit written requests for $150,000

(and later $157,795.30) and when defendant refused to pay, that was a breach of the contract that entitled plaintiff to immediately sue and recover the additional deposit amount it requested, without enumerating its actual expenses. See Ediciones Quiroga, S.L. v. Fall River Music, Inc., No. 93 Civ. 3914, 1995 WL 366287, at *2 (S.D.N.Y. June 20, 1995) ("The doctrine of repudiation allows a party to sue for breach immediately, when the other party clearly and unequivocally repudiates its performance under the contract.").

However, to the extent plaintiff needs to enumerate its expenses to prevail on summary judgment, plaintiff has done so. It is undisputed that plaintiff incurred $157,795.30 in unpaid expenses that fall within the contract's definition of expenses, which covers "accounting, consulting, travel, due diligence, internal and external legal and tax, and other expenses." See Pl. 56.1 Statement, ¶¶ 26-27; Burton Decl., Ex. 3.

Defendant's attempts to defeat this conclusion are unavailing. First, defendant argues that plaintiff "offers no evidence that the third $150,000 payment it demanded was in excess of the Initial Work Fee, or that the $300,000 previously wired by [defendant] was expended completely, to pay for its expenses." Def. 56.1 Counterstatement, ¶ 26. That is not true. Plaintiff put forward prima facie evidence of its expenses in excess of the $300,000 it was paid, and in response, defendant offered no

rebuttal evidence other than to make conclusory statements that are either unsubstantiated or irrelevant. In fact, defendant does not take issue with any of the specific expenses that plaintiff enumerated except for the $48,048 of in-house legal fees. See Def. 56.1 Counterstatement, ¶¶ 26-29.

Even then, defendant's attempts to dispute the $48,048 of in-house legal fees are baseless. The contract plainly states that defendant agreed to pay plaintiff "*internal* and external legal" expenses, see Burton Decl., Ex. 3 (emphasis added), and plaintiff provided an invoice that details the $48,048 of internal legal expenses it incurred, see Burton Decl., Ex. 19, ECF No. 27-19. Defendant's factual assertions in response either have no evidentiary support or are completely irrelevant. See Def. 56.1 Counterstatement, ¶¶ 27-29. And defendant's legal arguments about the ethical impropriety of charging $48,048 of in-house legal fees stray further off base. Defendant does not argue that the ethics rules provide a basis for finding the contractual provision requiring the payment of internal legal fees is unenforceable. Therefore, the ethics of charging in-house legal fees has nothing to do with whether defendant is contractually on the hook to pay for those fees.

It is therefore undisputed that plaintiff is entitled to $157,795.30 in damages. Under N.Y. C.P.L.R. §§ 5001, 5004, plaintiff is entitled to prejudgment interest of 9% per annum from

the date of breach. See also Stanford Square, L.L.C. v. Nomura Asset Cap. Corp., 232 F. Supp. 2d 289, 292 (S.D.N.Y. 2002) ("it is the date of the breach that is relevant for computing prejudgment interest."). The date of breach as it relates to the $150,000 is August 1, 2022, and the date of breach as it relates to the additional $7,795.30 (requested in 2023) is February 9, 2023.

## IV.   Conclusion

The Court hereby reconfirms its "bottom-line" order granting summary judgment to plaintiff and denying defendant's motion for summary judgment. Defendant is liable to plaintiff for $157,795.30, plus prejudgment interest to be calculated by the Clerk of the Court of 9% per annum beginning on August 1, 2022 for $150,000 of the damages and 9% per annum beginning on February 9, 2023 for $7,795.30 of the damages. See N.Y. C.P.L.R. § 5001(c) ("The amount of interest shall be computed by the clerk of the court," but "[t]he date from which interest is to be computed shall be specified" by the Court.) The Clerk is respectfully directed to make the indicated calculation, enter final judgment, and close the case.

SO ORDERED.

Dated:     New York, NY

November 14, 2023          JED S. RAKOFF, U.S.D.J.